## No. 11,819.

### WIDOW JOHN R. DALY vs. H. HALLER MANUFACTURING COMPANY, LIMITED.

A boy of fourteen years, being employed in a tinware factory to operate a small foot machine used for the purpose of punching eyes in small tin cans that were being manufactured by machinery, who voluntarily leaves his place of business, and goes away to another part of the establishment for the purpose of adjust-

ing a belt connecting one of the machines of the factory with the line of the main shaft, and while thus employed receives serious and fatal injuries of which he dies, his parents can not recover damages of the corporation.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Frank McGloin* for Plaintiff, Appellant.

*Bernard McCloskey* and *Branch K. Miller* for Defendant, Appellee.

Argued and submitted November 6, 1895.
Opinion handed down November 18, 1895.
Rehearing refused February 10, 1896.

The opinion of the court was delivered by

WATKINS, J.   Plaintiff claims fifteen thousand dollars damages of defendant for the loss of the life of her minor son, Joseph Daly, while engaged in its manufacturing establishment in the city of New Orleans, charging that same was occasioned through the gross neglect and carelessness of its agents, servants and employees.

The averment of her petition substantially is, that on the 6th of August, 1893, her son was *directed by the defendant's foreman* to adjust a belt connecting one of the machines of its tinware factory with the line of the main shaft; that instead of stopping the revolution of the shaft until the belt was adjusted the same was continued at a high rate of speed.   That defendant furnished no safe means of reaching a large wheel on the main shaft, on which the belt was to be adjusted, by reason of which the said Joseph Daly was obliged to reach the same by means of a ladder.

That while attempting to place the belt as instructed he was caught by the same, whilst it was rapidly revolving, dragged from his position on the ladder and carried around by the wheel in its revolutions, his feet and other portions of his body striking against the ceiling, shaft and wheel.

The plaintiff further alleges that defendant was *without right to impose upon her son a dangerous duty of the character described,* and was further at fault in not furnishing free access to the wall and a

proper standing place from which to catch the belt and throw it on the wheel or pulley.

The answer is a general denial, coupled with a plea of contributory negligence on the part of the boy.

With regard to the manner in which the accident occurred, and the result, proof in the record substantially shows the following facts, viz.:

. On the 16th of August, 1893, plaintiff's son, of fourteen years of age, was engaged as an employee in the tineware factory of defendant, at Nos. 119 and 121 Magazine street, in the city of New Orleans. And the boy, while thus employed, having undertaken to adjust a belt connecting one of defendant's machines with the line shaft upon the wall, he was caught by the belt and dragged from his footing, and carried with the rapidly revolving pulley overhead.

When, soon afterward, the machinery was brought to a stop, the boy was taken out in a frightfully mangled and disabled condition.

The physician who was summoned to attend the wounded boy makes the following statement, and diagnosis of his case, viz.:

" When I saw the boy, he was suffering much from the leg, and the depression of the nervous system, caused by his injuries, and he had a fracture of the right thigh and had fractured some of the ribs, and also a fracture of the left arm; and I presume there was some internal injury that caused this depression, but never found out what it was. And he died in the course of about sixteen hours! That is about the condition I found him in. And he never did arouse, but continued growing weaker until he died.

" Q. How many places did you find his leg broken in?

" A. His leg was broken in two places.

" Q. Two different places ?

" A. Yes, sir.

" Q. How many places was his arm broken in?

" A. Only one, right in the elbow-joint—into the joint.

" Q. How many ribs did you find stove?

" A. About three.

Plaintiff's brief, p. 2.

The boy suffered very greatly from these injuries for a period of sixteen hours and died.

That he was susceptible of suffering pain is shown by the fact that he remained perfectly conscious to the last moment.

In addition there is positive proof, by the testimony of the afflicted mother, that his pain and sufferings were very great.

On this state of facts plaintiff's counsel well says:

" If this lamentable catastrophe was due to the negligence of the defendant company, and was without contributory negligence on the part of the injured boy, there should be judgment in favor of the plaintiff."

He then formulates the three following propositions, upon which he founds the charge of negligence, viz.:

" 1. It is declared that the defendant did not furnish appliances safe for the service, during the performance of which this boy was hurt.

" 2. That this boy was commanded, directly or by implication, to perform this perilous service.

" 3. That, employing inexperienced and thoughtless boys about machinery of a dangerous character, it was the duty of the defendant, or its agents, to warn such employees of the perils confronting them, which was not done."

The case was tried by a jury, and from a verdict in favor of the defendant the plaintiff has appealed, after having made an unavailing effort, in the lower court, to obtain a new trial.

In this court the contention of defendant's counsel chiefly is, that notwithstanding the plaintiff's son was employed in defendant's factory at the time the accident happened, yet his employment was confined to a small foot machine, which was used for the purpose of punching " eyes" in tin-cans, which the defendant manufactured; and that this occupation was entirely free from danger—its operation being simple, and easily conducted.

That on the occasion on which young Daly received the injuries described, he left the foot-machine and had gone to another part of the room; where, climbing up a ladder which was leaning against the wall, he attempted to adjust a belt, or pulley—same being no part of his duty, or employment, and which he had been neither ordered or instructed by any one on behalf of the defendant to do.

That in thus attempting to adjust the belt, he was away from the place at which he should have been, and where his duty required him to have been.

The superintendent, as a witness for the defendant, says there was another boy who was employed to do that work on the machine

where the plaintiff's boy got hurt. That he gave instructions to the foreman in the shop, and that his instructions to him were "not to let any of the boys have anything to do with the belt." That the distance between the place where Daly's regular work was and that where he was hurt was about thirty feet.

That in order to go from the place where his business was to the place where he was hurt he was compelled to climb a ladder; and the ladder had first to be placed in position.

In the course of the witness Wolf's (the foreman) examination, the following occurred, viz.:

Q. Did you give any instructions to any of the employees on that floor of the factory what to do?

"A. About putting the belting upon the pulleys, I did. I told them to notify me.

" Q. To whom did you give that direction?

" A. To all of the boys.

" Q. Did you give it to Daly?

" A. Yes, sir.

"Q. Your instruction to Daly was to do what?

"A. To let me know when the belt fell off, so that it could be put on.

" Q. Was the order to do anything more than simply to notify you when any belt was required to be put back?

" A. No, sir; he was to notify me.

" Q. On your being notified that a belt was required to be adjusted, what would you do?

"A. I would have my assistants to put it on under my directions?

" Q. Who generally performed (this duty) under your direction?

" A. Harry Lew, for the small belts, and Jake Riley for the large belts.

" Q. To your knowledge, did Daly ever perform any such service?

" A. No, sir.

" Q. What kind of work was it that Daly really was employed to do?

" A. To put ears in the buckets, on the foot press."

*Per contra*, the statement of Harry Lew, the boy to whom the superintendent refers, is, that to adjust the bands spoken of, two persons were required; one person could not adjust it.

In the course of his examination by the plaintiff, as her witness, the following occurred, viz.:

"Q. After you were on the shaft, what did you do? You had to stand on the rung of the ladder to reach out and put the belt on?

"A. Yes, sir.

"Q. Did you ever do that?

"A. Yes, sir.

"Q. How often?

"A. A couple of times.

"Q. You say the whole time you were there; how often did you put it up!

"A. I could't say. I did it a great many times.

"Q. Did you do it habitually—did you do it as a rule?

"A. *Whenever the belt had to be put on, I had to put it on.* (Our italics.)

"Q. Who was the other one that you had to help you?

"A. Daly used to put it on, too.

"Q. Who else?

"A. The foreman.

"Q. Those are the only ones who used to put it on—either the foreman or Daly?

"A. Yes, sir.

"Q. Who told you to put the belt on?

"A. The foreman told me to put it on.

"Q. You mean by the foreman, Mr. Wolf?

"A. Yes, sir."

But on cross-examination this witness, who was an eye-witness to the accident, says in course of his answers:

"Q. Who told (Daly) to do this?

"A. To put on the belt?

"Q. Yes, sir.

"A. *I did not hear any one tell him to put on that belt.* (Our italics.)

"Q. *He did it on his own volition?*

"A. *Yes, sir; I never heard any one tell him to put on that belt.* (Our italics.)

"Q. Did you ever have any instructions from the foreman or the assistant foreman to put on that belt?

"A. About telling me to put it on?

"Q. About your putting it on.

"A. *He told me to put it on. The foreman used to tell me to put it on.*" (Our italics.)

There are one or two others of plaintiff's witnesses who testify that they frequently saw young Daly engaged in adjusting the belt. Yet, on the main proposition, that the boy was, by his employment, charged with that duty, or that he performed that service at the instance, under the direction, or with the knowledge of defendant's agents, servants, or employees, there is no contradiction of the positive testimony of the foreman and superintendent.

And there is where plaintiff's case fails.

It is perfectly clear, from the evidence, that plaintiff's son was not directed by defendant's foreman to adjust the connecting belt the witnesses described as causing the accident; and it is equally clear that neither of defendant's servants, agents or employees ever imposed upon him the performance of that dangerous duty. Yet, it is in proof that he did it sometimes, voluntarily; though this was unknown to and not sanctioned by the defendant's superintendent or foreman.

Our conclusion is that a case for damages is not made out.

Judgment affirmed.