## HATTAWAY v. THE ATLANTA STEEL AND TIN-PLATE COMPANY.

[No. 18,869. Filed November 27, 1900.]

MASTER AND SERVANT.—*Personal Injuries.—Knowledge of Danger.*— Plaintiff was employed in defendant's tin-plate factory in operating a plating machine, and, while passing a vat filled with oil which was used in connection with the machine, his foot slipped on the oily floor and he was thereby thrown into the vat of boiling oil and severely injured. It was shown by the special verdict that defendant's servants, who had been in its employ but a few weeks, had spilled the oil on the floor and had covered it with sawdust; that plaintiff had been in the service of the defendant, operating the plating machine for about two months and knew of the practice of using sawdust to absorb oil that had been spilled upon the floor. *Held,* that the condition of the floor and the open vat were as well known to the plaintiff as to defendant, and that plaintiff cannot recover for the injuries received. *pp. 508-519.*

MOTIONS.—*Appeal and Error.*—The action of the court in sustaining a motion for judgment in favor of defendant will not be disturbed on appeal because of a defect in the form of the motion where a correct result was reached. *p. 519.*

From the Hamilton Circuit Court. *Affirmed.*

*R. K. Kane, T. E. Kane* and *T. J. Kane,* for appellant.

*J. C. Blacklidge, C. C. Shirley* and *Conrad Wolf,* for appellee.

JORDAN, J.—Appellant sued appellee to recover $25,000 damages for personal injuries sustained while in its employ. A trial before a jury resulted in a return of a general verdict in his favor for $3,000 with answers returned by the jury to numerous interrogatories. Appellee moved for judgment in its favor upon the findings of the jury under their answers to the interrogatories. This motion was sustained, and, over appellant's motion for a new trial, judgment was rendered in favor of appellee. The errors assigned in this appeal relate to the rulings of the court on these motions. It is alleged among other things in the complaint that defendant is a corporation engaged in manufacturing tinplate in the town of Atlanta, Hamilton county, Indiana, and that plaintiff is by trade a tin-plate worker and has been engaged at such work since November, 1894. In the month of April, 1895, he was employed by the defendant to work in its said factory and mill as a plater to operate one of its plating stacks or machines. As a part of his duties it was necessary for him to clean his stack and scour the rolls therein on Saturday of each week, and in order to scour such rolls it was necessary to raise them out of the stack by means of a chain attached to the top of the rolls and passed through a pulley overhead and fastened to a windlass which was attached to the wall in the rear of the stack. It was also necessary to run the oil and metal, which would accumulate in the plating stack, into a receiving vat provided for that purpose for each one of the stacks so operated, said vat being three and one-half feet long, two feet wide, and two and one-half feet deep. This receiving vat was placed at the rear of each of the plating stacks, and was sunk into the ground to the depth of about two feet and was under the windlass and chain heretofore mentioned, the space intervening between the wall to which the windlass was attached and the edge of the vat was about three feet. It is further averred that in cleaning said machine a hook was used to turn the rolls and this hook was a necessary imple-

ment in said business and was the only means for turning said rolls. There were four of the plating machines or stacks in the plating room of the defendant's factory, three of which were in operation, one being that at which plaintiff worked and was situated on the north side of the room. The other two were situated on the south side opposite to the machine operated by plaintiff. On Saturday, June 29, 1895, plaintiff in the discharge of his duties as an employe of the defendant was engaged in cleaning his machine, and for the purpose of cleaning it he had emptied or run the oil therein contained into the receiving vat heretofore mentioned, which vat was entirely open, uncovered and unprotected. He avers that there ought to have been a hook supplied to be used for the purpose heretofore mentioned for each one of the said machines, but upon the contrary there was but one of said hooks furnished for the use of all of the platers to be used by them in cleaning their stacks or machines. At the time and upon the occasion heretofore mentioned he went to the machine situated on the south side of the room to get this hook to use it in cleaning his machine, and thereupon discovered that it was not in its proper place in front of the machine, but had been placed in the rear thereof; that in order to procure the hook it was necessary for plaintiff to pass over the narrow space between the wall and the vat and under the chain and windlass fastened to the wall. The machine on the south side of the wall had just been cleaned in the manner heretofore stated, and the receiving vat in its rear was filled with hot oil and was uncovered and unprotected. The floor about this machine was completely covered with a layer of sawdust. In passing this vat the plaintiff, without any fault or negligence on his part, stepped on some oil which had been spilled on the floor by the side of said vat, which oil had been covered over with sawdust so as completely to conceal it from view, and in so stepping plaintiff slipped and fell into the hot oil contained in the vat in question and thereupon sustained the

serious injuries of which he complains. It is further alleged that these injuries were sustained by plaintiff without any fault upon his part, and were wholly attributable to the negligence of the defendant in this, to wit: That the servants employed by it to operate the said plating machine, where the plaintiff was injured as aforesaid, were inexperienced workmen and without sufficient skill to operate said machine and were not familiar with its operations nor with the duties devolving upon them while engaged in the operation of the said machine, all of which was known to the defendant; that on account of the imprudence and unskilfulness of said employes caused by their inexperience and want of familiarity of their said duties so as to operate the said plating machine in a safe and proper manner, these employes permitted oil which had been spilled upon the floor to remain there, and instead of cleaning it up they covered it over with sawdust so as completely to conceal the same, all of which made it dangerous to go about said machine, and all of which was fully known to the defendant and unknown to the plaintiff when he slipped by reason of said oil and was thrown into said vat and injured as aforesaid alleged. The complaint, after describing the severity and character of the injury sustained by the plaintiff by falling into the oil vat in question, then proceeds to charge that the defendant ought to have furnished him with one of the hooks heretofore mentioned with which to perform the duties required. It is alleged that each of said plating machines ought to have been supplied with one of such hooks; that the plaintiff frequently requested the defendant to furnish him one of these hooks, and the defendant with each request promised to comply therewith but negligently failed to do so; that defendant also negligently failed to provide a covering for the vat into which plaintiff was thrown when he received his injury, and that it negligently permitted the said vat to remain open and uncovered, and by reason of the aforesaid respective acts of negligence on

defendant's part, it is charged that the plaintiff has been permanently injured as heretofore shown. If the facts set forth in the complaint can be said to be averred in such a manner as sufficiently to disclose a cause of action by reason of the defendant's negligence, such cause must be attributed to the act of the defendant in the employing of unskilful and inexperienced servants to operate the stack or machine at which plaintiff was injured by being thrown into the oil vat situated near such machine. It is charged that these servants, by reason of their inexperience and lack of skill in the operation of their plating machine, permitted large quantities of oil to remain on the floor and covered the same over with sawdust so as to conceal its presence and thereby render it dangerous to go about said machine. This negligence, under the theory of the complaint, seems to be intended as constituting the *proximate* cause of plaintiff's injury. We are of the opinion that the insufficiency in the number of the particular hooks which were used in cleaning the stacks or machines in question, and the further fact that the vat into which plaintiff fell was uncovered, are not disclosed under the averments of the complaint to have such essential connection with the accident in controversy as to lend any material support to the particular and principal wrong of the defendant, which plaintiff in his complaint attributes to be the *proximate* cause of his injury. With this view of the complaint we may next inquire in respect to the facts found by the jury in their answers to the interrogatories submitted to them.

The facts disclosed by these special findings, among others, may be said to be substantially as follows: Plaintiff at the time of the accident was a young man of the age of twenty-two years endowed with ordinary intelligence. Plaintiff previous to the accident had been engaged elsewhere in the manufacture of tin-plate for about eight months, and prior to his injury he had been engaged in operating for defendant one of its plating machines for

about two months. The defendant company for some months prior to the 29th day of June, 1895, the day upon which the accident occurred by which plaintiff was injured, had owned and operated a tin plate factory at the town of Atlanta, in Hamilton county, Indiana, in which the plaintiff had been employed to work for about a period of two months prior to said accident. The building in which he worked consisted of one large room extending lengthwise east and west. Through the center of this room ran an aisle about thirty feet wide. On either side of this aisle were a number of stalls or recesses extending from the aisle to the north and south walls of the building. These stalls were open at the ends next the aisle, but were closed on the other three sides. Above each of them and against the wall of the building was an open brick flue which served to carry off the fumes arising from the various plating machines used by the defendant in the tinning process. Each of these stalls was generally known as "a stack" and contained a tinning machine. This machine was placed lengthwise of the stack and was operated by two persons, the black or steel plates being fed into the same from one side and coming out on the other, thereby being plated with the tin through which it was made to pass. On the side from which these plates issued there was a large tank or vat four feet long, two feet wide, which was let into the floor a distance of eighteen inches or over and extended about six inches above the floor. This vat contained a quantity of oil used in the tinning process which was heated, when in the machines, to a very high temperature. When it became necessary to empty the machines of their contents in order to clean them, or for other purposes, the heated oil was drawn therefrom into the vats at the rear of each and then dipped back into the machine again as required. At the time plaintiff was injured the defendant's factory or mill contained four of these stacks or machines, two on each side of the aisle. Only three, however, were in operation, the one on the north side

at which the plaintiff was employed and another immediately across the aisle where he received his injury, and the third just east of and adjoining the one last mentioned. The stack at which plaintiff was injured was used to manufacture a dull, heavy class of tin plate, and was known as the "lead stack" and also as stack number two, while that immediately east of it was known as stack number one, and the stack which plaintiff operated was known as stack number three. It was the custom of the defendant's factory for its employes, who operated these machines, to run the oil therefrom into the vats every Saturday afternoon and thoroughly clean the machines, including the rolls through which the tin plating is passed, which rolls are immersed, when the machine is in operation, in the boiling oil. The day plaintiff was injured was Saturday in the afternoon, and the three stacks in the room were in process of cleaning. The plaintiff, immediately before he was injured, had crossed the aisle to the lead stack for the purpose of securing an iron hook or wrench, which was used in throwing the rolls out of gear for the purpose of cleaning them. There was but one of these hooks supplied for the use of the three stacks. It was, however, only occasionally that this hook was required, it being needed for but a few minutes at a time at each one of the stacks for two or three times during the run of a week. In attempting to pass behind the vat situated at the lead stack in order to secure this hook, plaintiff's foot slipped on the greasy floor and thereby he was thrown into the vat of boiling oil causing the injuries of which he complains. At the place where he slipped the floor was covered with a quantity of sawdust to a depth sufficient to conceal the grease or oil under it. The jury found that it had been the custom in the defendant's factory to use and apply sawdust whenever grease or oil was spilled on the floor, which was a frequent occurrence in order to take up and absorb the same. The plaintiff at no time prior to the

accident made any complaint to the defendant that the premises adjacent to the stack or machine where he was injured were unsafe, or that the floor was greasy or slippery, ·or that the vat or oil tank was uncovered. The oil which caused the plaintiff to slip was spilled on the floor about noon of the day plaintiff was injured. The place where it was spilled was exposed and the sawdust was in plain view, as was also the open vat near by containing the hot oil into which plaintiff was thrown. The place was lighted by light from a window, and there was nothing to prevent the plaintiff from seeing the sawdust which covered the oily floor, nor the open vat into which he fell. He was familiar with the premises, including the stack where he was injured, and he knew of the practice of using the sawdust for the purpose of absorbing the grease or oil that had been spilled upon the' floor and that such sawdust was used upon the floor for no other purpose. At the time of the accident, two other servants of the defendant, to wit, Lloyd Harbit and Frank LeFever, were engaged in operating the plating machine or stack near which plaintiff was injured. This stack was in the same room where plaintiff worked, and about thirty-three feet from the machine which he was engaged in operating. These two employes had been in the service of the defendant operating this plating machine for about three weeks before the accident, and the plaintiff was well acquainted with them, and before the accident in question he was about the machine which they operated about once or, twice in each week, and for the above period of time he was familiar with the manner in which they did their work, and no complaint was made by him to the defendant in respect to the incompetency or carelessness of either of these two employes. The practice of covering up oil spilled upon the floor, by the means of sawdust, had existed for two months before plaintiff was injured, but he made no complaint to the defendant nor gave it any information that such practice rendered the place where he worked more dangerous. An

angle formed by the south and north wall of the room where these machines were operated was the usual place for keeping the tools and appliances used in and about stack number two where the plaintiff was injured. It was entirely safe, as the jury found, for the employes of the defendant to pass back and forth in front of the said machine to the corner or angle mentioned when necessary to obtain any of the tools used in connection with their work, and the wrench or hook for which plaintiff was looking, when injured, was one of the tools or appliances usually kept in the aforesaid angle or corner of the room, and the employes of the defendant, including plaintiff, had been frequently instructed to keep all tools and appliances, including said hook, in the angle or corner aforesaid mentioned when such appliances and tools were not in use. Plaintiff frequently, prior to his injury, went about the stack known as number two, while the same was being operated by Harbit and LeFever, for the purpose of securing this wrench or hook to be used in cleaning his machine. No accident prior to the one by which plaintiff was injured had occurred through the carelessness or incompetency of either said Harbit or LeFever. The jury find in their special findings that the immediate or *proximate* cause of plaintiff's injury was oil spilled on the floor and concealed by sawdust; that the omission which produced such cause was the act of Lloyd Harbit, one of the employes who operated machine number two; that he had spilled the oil about noon of the day plaintiff was injured, and had failed to clean or take up said oil so spilled by him on the floor.

We may properly assume that the jury by their general verdict find that the proximate cause of appellant's injury was the offspring of appellee's negligence, as charged in the complaint, and that appellant was himself free of contributory negligence and that he did not assume the risk of the danger due to such negligence; for upon such theory only could a general verdict in his favor have been returned. The facts, however, specially found and returned by the

jury under their answers to the interrogatories, show that the proximate cause of plaintiff's injury was the oil spilled on the floor by Lloyd Harbit, a fellow servant who assisted LeFever in operating machine number two where appellant was injured; that the oil in question had been spilled by said Harbit about noon of the day upon which the accident happened. It further appears that appellant, before he sustained the injury in question, was frequently about the stack or machine operated by these two employes, and for a period of three weeks at least prior to the accident he was fully aware of the manner in which they performed their work, but made no complaint to the appellee in respect to the incompetency or carelessness, if any, of either of these servants, nor as to the condition of the floor adjacent to the stack which they operated. Appellant is shown to have been a man of mature age, of ordinary intelligence, and familiar with all of his surroundings. It is disclosed that for two months prior to the time of the accident, it was the practice in appellee's factory for the employes therein to throw sawdust on the floor where it had been rendered slippery by reason of the grease or oil which had accumulated thereon. The sawdust, as the jury find, was used for no other purpose except to cover up such greasy places on the floor, and such sawdust together with the open vats were exposed to the full view of appellant and his associates engaged at work in the factory. Appellant made no complaint, it is shown, to the appellee, nor did he give it any information that the practice of covering up such places upon the floor with sawdust rendered the same more dangerous. It is insisted by counsel for appellee that if it can be asserted that appellee was guilty of actionable negligence, upon the other hand it is conclusively disclosed by the special facts that this case falls within the rule of assumed risk upon the part of a servant, and consequently appellee is not liable for the injuries of which appellant complains. The material facts disclosed by the special findings, when considered and given their full force, are certainly irreconcilably in con-

flict with the general verdict, and thereby may be said to destroy appellant's right to a judgment thereon.   As shown, he, at least for a period of three weeks, was familiar with the methods employed by Harbit and LeFever and other employes of appellee in respect to covering over with saw- dust the oil which had been spilled upon the floor.   It would further seem that if he had employed the sense of seeing with which he was endowed, that he must have ob- served this sawdust upon the floor, for the jury find that he knew of the practice existing among appellee's employes of using such material for the purposes mentioned, and knew that it was used for no other purpose.   He appears to have had full knowledge of these facts and of the condition of the floor around the machine operated by these two fellow serv- ants.   The condition of the floor with the sawdust thereon was as fully exposed to his view as it was to the appellee or any of its agents.   Certainly then under the circumstances he must have been aware of any increased danger due to the use of the sawdust upon the greasy or oily floor.   With the full knowledge of all this it appears that he made no com- plaint to appellee in regard to the peril due thereto, nor did he give any information to it in relation thereto, but seems to have voluntarily continued in its service.

We think that it may be asserted that the facts found conclusively disclose that the incompetency and carelessness, if any, of Harbit and LeFever, and the means employed by them of covering up and absorbing the oil upon the floor, and the condition of such floor as well as the open vat ad- jacent to the stack where these employes were engaged at work, were as open and as well known to appellant as such facts were known to appellee.   Under such circumstances the law regards the master and the servant upon an equality. It is a well settled proposition that where the defects or danger in controversy connected with the particular service in which the employe is engaged are alike open to him and the master, that the latter is not liable for injuries resulting to the servant therefrom.   If the former, under such cir-

cumstances, without complaint, continues in the services of the master, he may be said to have assumed the risk due to such danger, and cannot recover for an injury resulting therefrom. *Louisville, etc., R. Co.* v. *Kemper,* 147 Ind. 561, and cases there cited; *Wabash R. Co.* v. *Ray,* 152 Ind. 392, and cases there cited. In this latter case on page 400 of the opinion in speaking of the doctrine of assumed risk we said: "An employe who has knowledge or who, by the exercise of ordinary diligence or observation, can learn of the infirmities, imperfections, or hazards of implements, machinery, or appliances with which he works, or the hazards of the premises where he performs the duties of his employment, and continues in the service without objections and without the promise of repairment or change upon the part of the master, will be deemed to have assumed all the risks incident to such defects and hazards, and thereby will be held to have waived his right to recovery for injuries resulting therefrom. While this rule can not be extended so as to cast upon the employe the duty to search for latent defects in the machinery, appliances, and instruments used by him, or about which he works, or the hidden dangers of places where he is engaged in the line of his duty, yet it does go to the extent of holding that he assumes the consequences resulting from such defects and dangers as are apparent to him or such as, by the exercise of ordinary diligence and by giving proper heed to his surroundings, he might have discovered. *Rietman* v. *Stolte,* 120 Ind. 314; *O'Neal* v. *Chicago, etc., R. Co.,* 132 Ind. 110."

When the facts disclosed in the special findings are tested by this rule of assumed risk upon the part of servants, it is evident that appellant is for this reason alone not entitled to a judgment on the general verdict, and that the court did not err in rendering judgment in favor of appellee upon the special findings. Much is said by appellant's counsel in their argument in regard to the insufficient number of hooks furnished by appellee at its factory for the purposes heretofore mentioned. The hook, however, for which appellant

was in search when the accident occurred appears to have
been nothing more than a remote incident in the chain of
events leading up to the injury which he sustained, and
under the circumstances it exerted no controlling influence
over the case. A correct result under the facts having been
reached by the court's ruling upon the motion for judgment
in favor of appellee, there is no merit in the contention of
appellant's counsel in respect to the form of this motion.

The judgment is affirmed.