# ROBERTSON v. FORD.

[No. 20,517. Filed April 21, 1905.]

1. PLEADING. — *Complaint.* — *Master and Servant.* — *Assumption of Risk.*—*Common-Law Liability.*—A complaint showing that the master had allowed the belt-shifter and loose pulley connected with the machine at which the servant was working to become out of repair so that they could not be used, and that the servant was compelled to ascend a ladder and shift the belt by hand, and while so doing his sleeve was caught and he was thereby injured, states· no cause of action in favor of the servant at the common law in the absence of a promise to repair, since it must be presumed that such risk was assumed by the servant. p. 541.

2. SAME.—*Complaint.*—*Factory Act.*—*Orders of Factory Inspector.*—· *Violation.*—A complaint showing an injury by reason of the master's failure to furnish proper loose pulleys and belt-shifters, and which fails to show that the factory inspector had ordered such to be provided by the master, fails to state a cause of action under the factory act. p. 542.

3. MASTER AND SERVANT.—*Violation of Statutory Duty.*—*Negligence.* —The master's violation of a statutory duty constitutes negligence *per se.* p. 544.

4. STATUTES.—*Adoption from Other States.*—*Construction.*—Where a statute is adopted from another state, the construction given by the courts of such state will be considered as an aid in determining the proper construction thereof. p. 544.

5. PLEADING.—*Complaint.*—*Negligence.*—*Factory Act.*—A complaint which fails to state that a line shaft was negligently left unguarded and fails to show that such shaft could have been safely guarded without rendering it useless, and which does show that the servant had to "climb up" to throw on the belt, and that the servant was injured while throwing such belt, fails to state a cause of action under the factory act. p. 545.

6. SAME.—*Complaint.*—*Facts.*—*Conclusions.*—An allegation that it "was his [the servant's] duty to use the ladder and throw the belt by hand" is a legal conclusion, and adds nothing to a complaint. p. 546.

7. MASTER AND SERVANT.—*Voluntary Act Outside of the Scope of Employment.*—*Liability.*—The master is not liable for injuries received by the servant in voluntarily and without the master's command going outside of the scope of his employment to perform the work. p. 546.

From Howard Circuit Court; *James F. Elliott,* Judge.

Action by Daniel J. Robertson against Charles A. Ford as surviving partner of the firm of Ford & Donnelly. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*John E. Moore* and *Freeman Cooper,* for appellant.

*J. C. Blacklidge, C. C. Shirley, Conrad Wolf* and *Elmer E. Stevenson,* for appellee.

Jordan, J.—Appellant sued Charles A. Ford and William Donnelly, partners doing business at Kokomo, Indiana, under the firm name of Ford & Donnelly, to recover for personal injuries received while in the employ of said partners, by reason of alleged negligence. A demurrer for want of facts was sustained to the complaint, and upon appellant's electing to abide by his pleading, judgment was rendered against him for costs. After the judgment was rendered, but prior to this appeal, William Donnelly died, and the appeal is prosecuted against Charles A. Ford, as a surviving partner, under the rule affirmed in *Hess v. Lowrey* (1889), 122 Ind. 225, 7 L. R. A. 90, 17 Am. St. 355.

The only error assigned is based on the ruling of the trial court in sustaining the demurrer to the complaint, the material allegations of which are as follows: Charles A. Ford and William Donnelly, on January 26, 1903, and prior thereto, were partners engaged in conducting and carrying on a foundry in the city of Kokomo, Howard county, Indiana, under the firm name of Ford & Donnelly. Appellant at and before said date was in their employ, engaged at work in their foundry in operating and assisting to operate a machine denominated a "rattler," which was used for the purpose of cleaning castings. It was propelled by steam, and had a main line shaft which entered a room wherein the machine was operated. The north end of this shaft was fastened to a post, and a belt extended from the pulley on the main line to a countershaft imme-

diately over said rattler. On this countershaft were two pulleys—one loose and the other tight. A belt extended down from the countershaft to the pulley on the rattler. It was necessary and practical to attach a belt-shifter to said machinery, and by means thereof the belt which connected with the line shaft could be quickly shifted from the tight or fixed pulley to the loose one on the countershaft, and thereby stop the running of the rattler. The loose pulley and belt-shifter were necessary and indispensable for such purpose, and further to secure the proper and safe running of the machine. The defendants, it appears, had provided a loose pulley for the countershaft, and also a belt-shifter for the purpose of throwing the belt off and on the loose pulley. Some ten days or two weeks prior to the time that appellant sustained his injuries, the loose pulley on said shaft became fixed or fast, and the belt-shifter then in use was so broken and impaired that it could not be employed for throwing the belt, but nevertheless the defendants continued to operate the rattler without a loose pulley and a belt-shifter, with the full knowledge that both of the said appliances had been impaired, and were in such a condition that they could not be, and were not, used for the purpose for which they were intended. Although ample time had elapsed, before appellant was injured, in which the defendants could have repaired the loose pulley and belt-shifter, but it is alleged that they failed to make said repairs or to provide any means by which the said machine could be stopped; and by reason of the failure to repair said appliances, or to provide other means for stopping the rattler in question, appellant, together with other employes of the defendants, was compelled to and did use a ladder to ascend to the line shaft and throw, by means of the hand, the belt which propelled said small shaft and rattler, that being the only method by which the running of the rattler could be stopped. When the employes of the defendants

ascended the ladder, as it was their duty to do, in order to throw the belt by hand, their hands, while engaged in throwing the belt, would come dangerously close to the line shaft. This latter shaft was not guarded and protected, as it ought to and might have been, of all of which facts the defendants had full knowledge long prior to the date upon which appellant received his injuries. On January 26, 1903, it became necessary to stop the rattler, and appellant for that purpose secured a ladder and placed it against the post which held the north end of the line shaft, and, in the line of his duty, ascended the ladder for the purpose of throwing the belt by the means of his hand, and, as he "reached out" his hand to throw the belt, his working jacket was caught in said line shaft, which at that time was rapidly revolving, and was not guarded and protected by guards of any kind, as it ought to and could have been guarded and protected. His body was thereby suddenly and with great force thrown around said shaft, and by reason thereof he was injured, bruised and lacerated, and thereby was permanently injured, etc.

1. It is certainly evident that, under the facts averred in the complaint, no liability against the defendants at common law in favor of appellant is shown. This must be true for the reason alone, if for no other, that it is apparent that appellant had knowledge that the belt-shifter in question was broken and out of repair, and that the line shaft by which he was injured was unguarded. Under these circumstances when tested by the rule at common law, appellant will be held to have assumed the risk or danger incident thereto, in the absence of any showing that after he acquired such knowledge he was induced to remain in the services of the defendants through their promise to repair or make the same safe. *Hattaway* v. *Atlanta Steel, etc., Co.* (1900), 155 Ind. 507; *Whitcomb* v. *Standard Oil Co.* (1899), 153 Ind. 513; *Wabash R. Co.* v. *Ray* (1899), 152

Ind. 392; *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 58 L. R. A. 944; *Brazil Block Coal Co.* v. *Gibson* (1903), 160 Ind. 319, 98 Am. St. 281.

2. Counsel for appellant argue that under the facts the defendants are liable because they are shown to have neglected to perform a duty imposed by the provisions of what is known as the "factory act" (Acts 1899, p. 231, §7087a *et seq.* Burns 1901). There is no general averment of negligence in the complaint to show that the defendants had failed to perform any duty enjoined upon them by the statute in question. It is difficult, under the facts outlined in the complaint, to discover the true theory upon which it proceeds in the attempt to state a cause of action. The pleading, after alleging the necessity of a belt-shifter to be used for the purpose of shifting from one pulley to another the belt connecting the small shaft with the line shaft, and thereby, when necessary, stopping the rattler, then proceeds to aver that, about two weeks before the accident by which appellant was injured, the belt-shifter provided by the defendants for that purpose had been broken, and was, at the time of the accident, out of repair, and could not be used in shifting the belt, all of which, it is alleged, was well known to the defendants. It appears from the facts averred that after the defendants knew of the condition of the belt-shifter, as alleged, ample time was afforded for them to have repaired the shifter, or to have furnished other means for stopping the machine in controversy. They, however, failed to do so, and by reason thereof it is charged that appellant, together with others of their employes, was compelled to ascend to the line shaft by the use of a ladder, and throw by hand the belt by which this shafting was propelled, and in this manner stop the running of the rattler. It is charged that this line shaft was not guarded and protected as it ought to have been and might have been, all of which was well known to the defendants. It appears that appellant, on the day he was injured, employed a lad-

der in ascending to or reaching the line shaft by which he was injured, for the purpose of throwing the belt by means of his hand; and, while in the act of extending or stretching out his hand for that purpose, his working jacket was caught by the shaft, and thereby he was injured as alleged. His counsel, in their argument, apparently contend that the defendants are at least liable for the reason that in two particulars they are shown to be guilty of negligence: (1) In not furnishing and supplying a loose pulley and a belt-shifter as required by §7087i Burns 1901, Acts 1899, p. 231, §9; (2) in leaving the line shaft by which appellant was injured unguarded, in violation of this section.

The first part of §7087i, *supra,* declares: "It shall be the duty of the owner of any aforesaid establishment, or his agent, superintendent or other person in charge of the same, to furnish and supply, or caused to be furnished and supplied therein, in the discretion of the chief inspector, where machinery is used, belt-shifters or other safe mechanical contrivances for the purpose of throwing on or off belts or pulleys." It is too plain for argument that the complaint does not state a cause of action, within the above provisions of the statute, upon the mere showing that the defendants failed to furnish and supply a belt-shifter and loose pulley, as charged, in the absence of disclosing any order or direction to them by the chief inspector to furnish such appliances. It will be seen that the legislature has made the question of supplying belt-shifters or other safe mechanical contrivances, for the purpose of throwing on or off belts or pulleys, a discretionary matter with the chief inspector. As there are no facts alleged to show that the defendants had in any manner neglected to obey any order or direction given to them by this official to furnish and supply a belt-shifter for the purpose of shifting the belting connecting the countershaft with the line shaft in controversy, it is manifest, under the circumstances, that no neglect of duty on the part of the defendants, within the meaning of the

statute, is in this respect disclosed by the complaint. *Indiana Mfg. Co.* v. *Wells* (1903), 31 Ind. App. 460; *Knisley* v. *Pratt* (1896), 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367. The further provisions of §7087i, *supra,* require that "all vats, pans, saws, planers, cogs, gearing, belting, shafting, * * * shall be properly guarded."

3. The inquiry next arises, does the complaint state a cause of action on the ground that the line shaft which caught the jacket of appellant, and thereby injured him, was not properly guarded, as required by the statute. By its provisions, which require that "all vats, pans, saws, * * * shall be properly guarded," it is made the imperative duty of all persons operating manufacturing concerns which come within the scope of the statute to comply with these requirements. Of course, the act does not intend to exact a compliance where, in respect to some particular machinery or appliance, it is impossible properly to guard it without rendering the same useless for the purpose for which it was intended. The law never exacts the performance of an impossibility. Under the statute, a failure to comply with its provisions is made a criminal offense. The disregard of a statutory duty on the part of an employer, in an action by an injured employe to recover damages therefor, will be, as a general rule, considered and held to be negligence *per se. Davis* v. *Mercer Lumber Co.* (1905), *ante,* 413, and cases cited; *Monteith* v. *Kokomo, etc., Co., supra.*

4. Our factory inspection statute, except its title, appears to have been copied from the one enacted by the legislature of New York. Especially is this true in respect to the provisions of §7087i, *supra.* The higher courts of New York have given the act of that state an interpretation which will aid us in considering the construction which should be accorded to our own statute.

In the case of *Glens Falls, etc., Cement Co.* v. *Travelers Ins. Co.* (1900), 162 N. Y. 399, 56 N. E. 897, the court,

in construing the act, said: "We think, however, that the legislature could not have intended that every piece of machinery in a large building should be covered or guarded. This would be impracticable. What evidently was intended was that those parts of the machinery which were dangerous to the servants whose duty required them to work in its immediate vicinity should be properly guarded, so as to minimize, as far as practicable, the dangers attending their labors. Human foresight is limited, and masters are not called upon to guard against every possible danger. They are required only to guard against such dangers as would occur to a reasonably prudent man as liable to happen."

In *Cobb* v. *Welcher* (1894), 75 Hun 283, 26 N. Y. Supp. 1068, the court said: "We do not understand the statute to make the factory man an insurer of the safety of his employes, or that it requires him to guard against the extraordinary accidents which careful and prudent men could not foresee or anticipate as liable to occur." We approve, as being correct, the interpretation given to the law by the above decisions of the New York courts.

5. There is no general averment that the defendants negligently left the line shaft unguarded, and, aside from the mere statement that it "was not guarded as it ought to have been and might have been," there is nothing alleged to indicate or show that the shaft in question was one which it was possible for the defendants to have guarded properly without rendering it useless for the purpose for which it was employed in the foundry. In regard to this fact, under the circumstances, we are left to assume or conjecture. As to the height or distance of the shaft above the place where appellant and his associates were engaged in discharging the duties of their employment, the pleading does not disclose, except to indicate that it was so far above the place where appellant was at work that he used a ladder to "climb up," in order to throw by hand the belt which

propelled the small shaft. It appears that he was standing on this ladder when his working jacket was caught by the line shaft. For aught appearing to the contrary it may have been at such a height above him and his co-employes with whom he was engaged in operating the rattler as to have made it impossible to subject any of them to the danger incident thereto unless in the attempt to perform the same act and in like manner as attempted by appellant. The averments that because the loose pulley had become fast, and the belt-shifter was broken and unfit for use, appellant was compelled to use a ladder to ascend or "climb up" to the line shaft, in order to throw the belt of the small shaft by hand, and the further averment that it was his duty to use the ladder for this purpose, are but mere conclusions, and are, therefore, without any force in stating a right of action. There are no facts alleged to justify the conclusion in question. *City of Logansport* v. *Kihm* (1902), 159 Ind. 68, and cases there cited; *State, ex rel.,* v. *Casteel* (1887), 110 Ind. 174.

6. In regard to the statement that it was appellant's duty to use the ladder and throw the belt by hand, it may be said that, under a rule which is applicable to this case, a pleading must allege facts from which a particular duty, either on the part of the plaintiff or the defendant, may be inferred or implied. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247.

7. Disregarding, as we must, the unwarranted conclusions and recitals, the facts remaining in the complaint may be said to show that appellant, without any direction, command or requirement on the part of his employers, voluntarily left his post where he was employed to work in operating the rattler, and exposed himself, in the manner shown, to the revolving shaft—an obvious or known danger—and thereby was injured. His act in doing what he did does not appear to have been in the line of duty under his contract of employment, but was purely a matter of his own choice.

It is evident that under such circumstances a recovery is precluded. *Pittsburgh, etc., R. Co.* v. *Adams* (1886), 105 Ind. 151; *Indiana, etc., Oil Co.* v. *O'Brien* (1903), 160 Ind. 266; 3 Elliott, Railroads, §1313; 2 Labatt, Master and Serv., §§633, 634; 1 *ib.* §337; *Daly* v. *Haller Mfg. Co.* (1896), 48 La. Ann. 214, 19 South. 116; *Freeberg* v. *St. Paul Plow Works* (1892), 48 Minn. 99, 50 N. W. 1026; Beach, Contrib. Neg. (3d ed.), §37.

Upon no view of the case, under the facts as presented, can we hold that the pleading in question states a right of action; hence the demurrer to the complaint was properly sustained.

Judgment affirmed.