# ROBBINS, ADMINISTRATRIX, v. FT. WAYNE IRON & STEEL COMPANY.

[No. 6,101.   Filed April 21, 1908.]

1. TRIAL. — *Verdict.* — *General.* — *Interrogatories.—Conflict.—How Determined.*—The court in determining whether the answers to the interrogatories to the jury control the general verdict, should consider the pleadings, the general verdict and the interrogatories and answers.  p. 558.

2. MASTER AND SERVANT.—*Dangerous Machinery.—Guarding.—Factory Act.*—Only such machinery as would appear dangerous to a reasonably prudent man needs to be guarded under section nine of the factory act (§8029 Burns 1908, Acts 1899, p. 231).  p. 562.

3. SAME.—*Assumption of Risk.—Contributory Negligence.—Factory Act.*—The doctrine of assumption of risk does not, but that of contributory negligence does, apply to servants when working with unguarded machinery required to be guarded by section nine of the factory act (§8029 Burns 1908, Acts 1899, p. 231).  p. 562.

4. SAME.—*Contributory Negligence.—Wilful Injury.*—A servant working about unguarded machinery required to be guarded by section nine of the factory act (§8029 Burns 1908, Acts 1899, p. 231), and whose negligence contributes to his own injury, cannot recover, unless the master's negligence was so gross as to amount to a wilful injury.  p. 562.

5. SAME.—*Factory Act.—Purpose.*—The purpose of section nine of the factory act (§8029 Burns 1908, Acts 1899, p. 231) is to extend the common-law duties of the master to provide a safe place, where servants were required to work in the vicinity of dangerous machinery capable of being guarded.  p. 562.

6. SAME.—*Factory Act.—Proof in Actions Under.*—In an action under section nine of the factory act (§8029 Burns 1908, Acts 1899, p. 231), the plaintiff must prove that (1) he was an employe, (2) the machinery in question was unguarded, (3) the machinery in question was dangerous, (4) his duties required him to work in the vicinity thereof, and (5) such machinery could have been guarded without rendering it useless for the purpose intended.  p. 563.

7. SAME. — *Factory Act.* — *Dangerous Machinery.* — *Violation of Rules.—Contributory Negligence.*—Where a servant, contrary to the known rules, undertakes to repair unguarded dangerous machinery while in motion, and while another servant, who had warned him of the dangers, was going to the proper place to stop the machinery, he is guilty of contributory negligence precluding a recovery.  p. 563.

From Dekalb Circuit Court; *Emmet A. Bratton,* Judge.

Action by Mary C. Robbins, as administratrix of the estate of Theodore A. Robbins, deceased, against the Ft. Wayne Iron & Steel Company. From a judgment for defendant on the answers to the interrogatories notwithstanding a general verdict for plaintiff for $1,500, plaintiff appeals. *Affirmed.*

*Henry Colerick* and *Lee J. Ninde,* for appellant.

*Elmer E. Stevenson* and *Zollars & Zollars,* for appellee.

MYERS, J.—Appellant, as administratrix, commenced this action in the Superior Court of Allen County against appellee, a manufacturing company, to recover damages by reason of the death of Theodore A. Robbins, alleged to have been caused by appellee's failure properly to guard certain parts of its machinery. The venue was changed to the Dekalb Circuit Court, where the cause of action, as stated in the amended third paragraph of complaint, answered in denial, was submitted to a jury, resulting in a general verdict for appellant, with answers to fifty-four interrogatories. Appellant's motion for judgment on the general verdict was overruled, and appellee's motion for judgment on the answers to the interrogatories was sustained. Judgment in favor of appellee. The ruling of the court on each of these motions is assigned as error.

If the facts specially found by the jury cannot be reconciled with those found by the general verdict, the ruling of the trial court was right. This question must be determined from the complaint, answer, general verdict, interrogatories and answers thereto. *Bemis Indianapolis Bag Co.* v. *Krentler* (1907), 167 Ind. 653. Appellant does not attempt to particularize the facts specially found and the pleaded facts in an effort to show that there is no irreconcilable conflict, but is content with the general statements that "the special findings·of the jury override the general verdict only when both cannot stand," and that

"the answers to the interrogatories were not such as to be wholly irreconcilable with the general verdict, but that from the allegations of the complaint it readily appears that the general verdict is easily supported and should be sustained."

From the complaint it appears that on February 1, 1904, and for two years prior thereto, appellee, at the city of Ft. Wayne, Indiana, was engaged in the business of manufacturing and rolling iron; that for the purpose of said business it maintained in its mill "two machines, set side by side, for the rolling of hot iron into rods and strips; that each machine consisted of an iron frame about six feet high and six feet wide, containing three horizontal rollers set one above the other in said frame, the shafts of which rollers projected through said frames and were joined, fastened or linked to the ends of rollers projecting in a like manner through the frames of the other machine; that there was a like arrangement of links, spindles and fasteners between the north set of rollers and the frame thereof and the engine that furnished the power to run said machine; that there was a space of about three feet between said machines and the frames thereof, and a like space between said north set of rollers and said engine, each of which said spaces contained no machinery except the roller ends and the couplings, set-screws and attachments connected and before described; that the sole purpose of said projecting shafts and the couplings, links and fastenings thereof between said north set of rollers and said engine was to transmit the power from said engine to the rollers on said north machine; that said machine and said links and couplings between said machine and between said engine and said north machine, in the use thereof, were constantly revolving at a high and dangerous rate of speed, but in the proper use of said rolling machines in defendant's business it was not necessary at any time to leave said space of three feet between said machines and the frames thereof, and said space between said north machine and said engine, open, unprotected and exposed;

but that said rolling machines would have been as service-
able to the defendant if said spaces and the roller ends and
the couplings connected therewith were boxed up or pro-
vided with guards.'' It is also alleged that said roller ends,
couplings and screws in said spaces were knowingly left un-
guarded; that appellant's decedent was in the employ of
appellee ''as an oiler and assistant millwright,'' and it was
his duty to oil the machinery about said mill and repair the
same; that on said day, and while decedent was in the line
of his duty, and while examining a piece of machinery near
said unprotected machinery for the purpose of seeing what,
if any, repairs were needed, ''he slipped, fell or was caught
between said unguarded roller ends between said north roll-
ers and said engine, without any fault on his part,'' where-
by he was crushed and instantly killed. It is also alleged
that no repairs were being made nor were about to be made
in or about said roller ends.

The interrogatories and answers thereto show that appel-
lant's decedent was, on February 1, 1904, and for about six
weeks prior thereto had been, in the employ of appellee as an
assistant millwright. Prior to his engagement with appel-
lee he had operated steam engines and other machinery. As
a part of appellee's machinery there was what is known as
''muck mill rolls,'' located in the southeast portion of the
mill and extending north and south. They comprise three
rolls, one above the other. The north end of the rolls ex-
tends through an iron frame and into another frame about
two feet distant. These extensions were called spindles.
Next to each frame on the spindle was boxing, and on the
boxing on the lower roll was a sprocket-wheel, to which was
attached an endless chain connecting the sprocket-wheel on
the feed-roll located immediately in front and east of the
lower main roll. The platform or floor upon which the men
worked in putting iron through the rolls extended north
and terminated at about the sprocket-wheel on the feed-roll,

and which platform was about eight inches above the ground. Prior to said day appellant's decedent had frequently assisted in adjusting said chain, and had assisted in adjusting chains on other sprocket-wheels in appellee's mill, had oiled the same, and was familiar with the chains and the construction and operation of said rolls, the movements of which were open and visible to any one looking at the same, and any person of ordinary intelligence, by looking at said rolls and boxing when in operation would know that injury would result to a person drawn between them; that prior to said day decedent had been warned and instructed by appellee not to attempt to adjust said feed-roll chain while the machinery was in motion, and had been instructed not to attempt to repair any machinery while the same was in motion, and knew that it was against the rule of appellee to undertake to repair machinery while in motion. On the day of the accident Quigley, head millwright, and decedent had adjusted the feed-roll chain, and immediately prior to the accident Quigley and decedent were working together. Decedent was standing on the ground in front of or to the northeast of said spindles and the sprocket-wheel on the feed-roll, and was told by Quigley not to attempt to adjust the chain until he stopped the machinery. Quigley then started to the place where he could signal to stop the machinery, and while on his way, and before reaching the place to give the signal—the signal-cord being about thirty feet south of the rolls—decedent was caught in the spindles and boxing and was killed. Decedent was familiar with the machinery about him and the ground where he stood, and was in a place of safety, and had he so remained until the machinery stopped he would not have been injured. The nature of the ground did not contribute to the accident. Guards could have been maintained which would have kept persons from coming in contact with the spindles or sprocket-wheels, but when making repairs or replacing

the chain it would have been necessary to remove such guards.

Appellant's cause of action is based upon appellee's alleged failure to guard certain spindles, boxing, sprocket-wheels and a chain, in violation of the provisions of the factory act (Acts 1899, p. 231, §9, §8029 Burns 1908). This section of the statute has been construed as not requiring every piece of machinery in a manufacturing establishment to be guarded. *Laporte Carriage Co.* v. *Sullender* (1905), 165 Ind. 290, 301. "Factories are only required to guard against such dangers as would appear to a reasonably prudent man as liable to exist." *Grace* v. *Globe Stove, etc., Co.* (1907), 40 Ind. App. 326, and cases there cited. It has also been held that in this class of cases the assumption of risk doctrine does not apply. *Bessler* v. *Laughlin* (1907), 168 Ind. 38; *Chamberlain* v. *Waymire* (1904), 32 Ind. App. 442. But the law of contributory negligence does apply, and where the answers to interrogatories establish facts showing that the injured party was guilty of negligence, which proximately contributed to his injury, he cannot recover for such injury unless the negligence of the master was so gross as to imply a wilful intention to inflict the injury. *Korrady* v. *Lake Shore, etc., R. Co.* (1892), 131 Ind. 261, 264. This is not a case of wilful injury, and the only question for our consideration is, do the facts specially found by the jury warrant this court in saying as a matter of law that the decedent was guilty of contributory negligence? If so, the judgment must be affirmed.

Appellee makes the point that the complaint and answers to interrogatories show that the machinery in question was not of the kind or character specifically designated by the statute to be guarded, citing *Laporte Carriage Co.* v. *Sullender, supra.* On this point it is difficult to determine from the decisions the true dividing line between the class of machinery or appliances desig-

nated to be guarded and the class not within the provisions of the statute and possible to guard without destroying their usefulness. It was evidently the purpose of the legislature in enacting this statute to extend the common-law duty of persons operating manufacturing plants to furnish a safe place, works and machinery for their employes (*Bessler* v. *Laughlin, supra*) by making it the imperative duty of the master to comply with its provisions and properly guard those parts of the machinery and appliances "dangerous to the servants whose duties required them to work in the immediate vicinity thereof" (*Glens Falls, etc., Cement Co.* v. *Travelers Ins. Co.* [1900], 162 N. Y. 399, 56 N. E. 897; *Robertson* v. *Ford* [1905], 164 Ind. 538), except where guards would render such machinery useless for the purposes for which it was intended. *Robertson* v. *Ford, supra; Laporte Carriage Co.* v. *Sullender, supra.* In the case last cited the court said: "What evidently was intended or contemplated by the legislature was that those parts of the machinery which were dangerous to employes whose duties required them to work in the immediate vicinity of such dangerous machinery should be properly guarded, in order to minimize as far as practicable the perils or dangers attending their labor." From these decisions a party claiming damages under the act in question must affirmatively show (1) that he was an employe; (2) that the machinery in question was unguarded; (3) that it was dangerous; (4) that his duties required him to work in the immediate vicinity thereof; (5) that it could have been properly guarded without rendering it useless for the purposes intended. Conceding that the general verdict amounts to a finding against appellee as to all of these facts, and that decedent was not contributorily negligent, and that all reasonable presumptions relating to facts which might have been proved under the issues formed (*Lake Shore, etc., R. Co.* v. *Graham* [1904], 162 Ind. 374) are to be indulged in favor of such verdict, and that con-

clusions and recitals of the pleader are to be disregarded
(*Robertson* v. *Ford, supra; City of Logansport* v. *Kihm*
[1902], 159 Ind. 68), we have a complaint alleging un-
guarded machinery described as spindles, boxing, sprocket-
wheels, links and chain, located in a certain space·three feet
wide, about which decedent worked when the same was out
of repair or was in need of oil. Connected with the ma-
chinery described were the muck mill rolls, and for aught
that appears in the complaint they were guarded. No other
machinery was in that part of the building, unless we may
infer from the conclusion of the pleader that there was an-
other piece of machinery near the machinery described.
How near or how far away does not appear. Its character
or kind is not shown. Whether guarded or unguarded is
untold. This statement in the complaint is without force in
stating the cause of action. *Robertson* v. *Ford, supra.* The
character of decedent's employment is the only fact from
which we are to know that he was likely to come in contact
with the alleged unguarded parts of the machinery alleged
to be dangerous only when in motion. Comparing the issu-
able facts in the complaint and the facts found by the an-
swers to the interrogatories, it clearly appears that the head,
millwright, in company with the decedent as his assistant,
immediately prior to the accident, had in mind some repairs
to the machinery described in the complaint, and with that
end in view they went to a point or place near said machin-
ery, and a place of safety. Knowing the rules of the mas-
ter, that no repairs were to be made while the machinery
was in motion, and the facts that the decedent was admon-
ished by his associate, who was in charge, not to attempt to
make any repair until the machinery was stopped, and that
he was caught in this same machinery, conclusively show
that he did violate the rules of the master; that he did not
heed the order of the person in charge of the machinery, but
left a place of safety to enter a place obviously dangerous,
while the master was engaged in making it safe. The an-

swers further show that decedent's duties, under his employment, did not bring him in touch with the machinery while the same was in motion.    His duties were to repair it when not running.    Therefore, as we see this case as disclosed by the record, it is unnecessary for us to decide whether the machinery, under the statute, was of the kind or class to be guarded.    The answers show that the decedent made an attempt to perform a service when the known rules of his employer prohibited it, and in the face of danger evident to an ordinary observer, whereby he was injured.    It is apparent, therefore, from these answers that the decedent did not use ordinary care to avoid danger, and his failure to do so proximately contributed to his injury.    This conclusion precludes a recovery in this action.    *Salem-Bedford Stone Co.* v. *O'Brien* (1895), 12 Ind. App. 217; *Southern R. Co.* v. *Davis* (1905); 34 Ind. App. 377; *Lake Shore, etc., R. Co.* v. *Graham, supra.*

Judgment affirmed.

Hadley, P. J., Comstock, Rabb and Watson, JJ., concur. Roby, C. J., absent.