## WILLIAM B. CLUNY *vs.* CORNELL MILLS.

Bristol.    October 23, 1893. — November 29, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Personal Injuries — Master and Servant — Unsafe Appliance — Negligence — Action.*

If a master carpenter in a mill, knowing that an appliance furnished to him by his employer is intended to be placed in a certain position for use in connection with operating a circular saw, places it in a different position, and an injury results to him therefrom, which could not have happened if the appliance had been placed as it was intended to be, he cannot maintain an action for such injury against his employer, who is not to be charged with negligence contributing to the accident; and it is immaterial whether the appliance might have been useless, or even dangerous, in other ways, if placed where it was intended to be placed.

Tort, for personal injuries sustained by the plaintiff while operating a circular saw in the employ of the defendant. Trial in the Superior Court, before *Braley,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiff testified that he was a carpenter by trade, and had worked for the defendant corporation about two years and a half; that one Diman was the defendant's superintendent, and the plaintiff worked under his orders and direction; that previously to July 5, 1892, there was no guard over the saw in question; that some time in the spring of that year the superintendent brought a guard to the plaintiff, but it was not put in a position for use until July 5, prior to which date he had been requested, both by the treasurer of the mill and the superintendent, to put the guard in position; that the plaintiff then put up the guard over the saw so that it would hang about three feet above the saw, and, by turning a thumb-screw, would drop plumb and even over the saw at the will of the operator; that the guard was a semi-circular piece of iron flat on the sides and hollow inside, suspended by a rod, the ends projecting about five inches beyond the teeth of the saw on either side; that previously to the accident, which occurred on July 8, 1892, he had received no instructions or directions from any one as to the use of the guard; that he had never used or seen such a guard before, or ever heard of its use; that he did not know there was any danger attending its use; that, on the day of the accident, he had some seven-eighths boards to saw into half-inch strips; that he fixed his gauge at the side of the saw in the proper position for this work; that this gauge was a movable piece of iron five and one eighth inches high, running parallel with the saw, and intended to keep the boards which were being sawed in a proper position, so that the width of the sawed strip would be even and true; that the work could not be properly done without the use of the gauge; that by turning the thumb-screw he lowered the guard, which was about one and a quarter inches through at the bottom, over the saw as far as it would go; that the gauge prevented the guard coming down close to the table, and the lower edge of the guard was above the table at a distance equal to the height of the gauge, as one edge of the guard brought up on top of the gauge; that the gauge had to be where

it was to saw that kind of stuff; that the saw projected about eight inches above the table horizontally, and one and a half inches vertically; that he sawed off one strip of board, which was left lying on the table back of the saw; that he then pulled the board back again, and was sawing off the second strip, and when the second strip touched the end of the first strip, which was nearly balanced on the farther side of the saw table, the first strip tilted up, and, hitting against the projecting end of the guard, was thrown on the teeth of the saw, and by the motion of the saw thrown with great swiftness and violence against the plaintiff, penetrating his arm and causing the injuries complained of; that the plaintiff had no time to get out of the way; and that he had never used the guard, except when he was sawing the strip which hit him, and part of the second one.

On cross-examination, the plaintiff testified that he was forty-three years old; that since 1869 his business had mostly been carpentering; that since May, 1890, he had had charge of the carpenter-work of the defendant, and during that time had used this saw every day more or less; that he had charge of the machine, including tables, saw, and gauge, and that it was his business to report if there was any trouble with it; that he was the one supposed to know if there was anything the matter with it; that Diman said that "he had bought me something to keep from cutting my fingers"; that he had cut his fingers the winter before on this same saw; that he laid the guard down on the floor; that afterwards Diman asked him when he was going to put it up; that he told him, when he could get at it; that the treasurer spoke to him before it was put up, and wanted to know what he thought of it; that he replied that "it might be a very good thing to keep the sawdust off a man, — any further than that he did not think there was much benefit to be derived from it"; that afterwards Diman spoke to him again, and told him "it was time it was put up"; that "he wanted it put up before I got hurt, so he would not be blamed for it"; and that he did not put it right up then, but put it up on the 5th of July.

The plaintiff testified further, upon cross-examination, that he formed the idea that the guard was to go over the saw, and to hang over the centre of it, when he was sawing; that he understood that the guard was made for the purpose of coming down

over the saw, so that the saw would revolve inside of the opening; and that that was the proper way to have it when it was being operated, so that it would cover up the top side of the teeth of the saw ; that he knew it ought not to come one side or the other of the saw; that the reason he did not draw it down was because it could not come any farther; that he would have drawn it down, if it would have come, so that it would cover the teeth of the saw, because he understood that was the proper place for it ; that he would have brought the guard down so it would have just cleared the stick, and would have been between seven eighths of an inch and an inch from the surface of the table; that that is what he would have done if the gauge had not been in the way; that that was the proper position for it if the gauge had not been there ; that if it had been down there, the stick could not have tipped up in the way it did ; that he had a good many pieces to saw, the sawdust was flying, and he thought he would drop the guard down to keep the sawdust out of his eyes ; that he unscrewed the arrangement and let it drop down, and it brought up on the gauge ; that he could not drop it any farther without getting hold of it and springing it inside of the guage ; that that could be done, but it would have required considerable spring to have pressed it inside the gauge ; that he did not try it, but he did think of it, because he " thought the thing was to put down on to the thickness of stock " ; that when the guard came down and stopped on the top of the gauge, he did not think it was down where it was intended to go; that if it had been down where he would have put it if the gauge had not been there, it would have prevented the stick tipping up and getting on top of the saw; and that he knew that at the time.

On re-direct examination, the plaintiff testified that neither at the time of the accident nor at any time before that did he know or think there was any danger of a stick being thrown back in the way this stick was, with the guard in the position it was in at the time of the accident; and that it was part of his duty to saw the stock as he was doing.

The plaintiff called as a witness one Mark Phillips, who testified that he had been a millwright for thirty-five years, and had worked as a carpenter in several mills ; that he was familiar with circular saws, and had had charge of them for ten years, and had

charge of putting up the saw in the defendant's mill; that he thought this guard was not a safe and suitable appliance; that he thought, with the guard in the position it was, resting on the gauge, it would be liable to catch and throw sticks; and that that would be one of the dangers of the guard.

On cross-examination, he testified that he had charge of setting up this circular saw, and that the plaintiff worked under him; that he gave him the most responsible work to do; that he was a natural mechanic and a good workman; that he recommended him to the defendant for its general carpenter; that the proper way to saw sticks of the size in question would be to have a stick about three eighths of an inch with which to push them along through; that it might be a proper way to saw them without such a stick; that when the guard was down on top of the gauge, the natural result would be that a stick would tip up and hit the guard; that any carpenter could see this; that he considered this an unsafe and unsuitable appliance, because you cannot see what you are doing; that if he had put the guard down where it was at the time of the accident, he would have kept it down; that if he had thought it was right when he got it there, he should have used it, and should not have used the stick; that he would not have put it there; that he supposed the guard was intended to be set right over the saw, as near to the saw as it could be put; that the intention was to have the saw revolve inside the opening so that the teeth of the saw would be covered up; and that it was probably not intended that the guard should be used in such a position as it was at the time of the accident.

The plaintiff also called as witnesses several other master carpenters, who were familiar with circular saws, and had used a guard like the one in question in the different mills in which they were employed, all of whom testified that they did not consider the guard a safe and suitable appliance for a circular saw, and that it was dangerous because it concealed the saw from sight; and on cross-examination they testified that, if the guard was drawn down over the saw as closely as possible to the wood which was being sawed, they did not think the stick would be thrown back.

At the close of the evidence, the judge ruled, as requested by the defendant, that there was no evidence which would warrant

a verdict for the plaintiff; and directed the jury to return a verdict for the defendant. The plaintiff alleged exceptions.

*J. W. Cummings,* (*E. Higginson* with him,) for the plaintiff.

*J. F. Jackson,* for the defendant.

ALLEN, J. It appeared from the plaintiff's own testimony that the guard was intended, as he well knew, to come down close to the board which was to be sawed, and that if it had been so placed the accident could not have occurred as it did ; that the plaintiff ran the saw with the guard resting upon the gauge, about three and one half inches higher than it was intended to be ; and that the accident occurred in consequence of the guard's being in this position. Under these circumstances the presiding justice rightly ruled that the plaintiff could not recover. There was no negligence on the part of the defendant which contributed to the accident ; and it is immaterial whether the guard might have been useless or even dangerous in other ways, if placed where it was intended to be placed. *Daigle* v. *Lawrence Manuf. Co.* 159 Mass. 378.                    *Exceptions overruled.*