## PINNELL ET AL. v. CUTSINGER.

[No. 6,717. Filęd October 26, 1909.]

1. TRIAL.—*Interrogatories.—Conflict.*—Where the answers to the interrogatories to the jury conflict with one another, the general verdict prevails. p. 420.

2. MASTER AND SERVANT.—*Factory Act.—Construction.—Dangerous Machinery.—Guards.*—Section nine of the factory act (Acts 1899, p. 231, §8029 Burns 1908), requiring dangerous machinery to be guarded, should be liberally construed to carry out its intent, guards, within the meaning thereof, being such appliances, whatever may be their names, as will protect employes from the dangers of such machinery. p. 423.

3. MASTER AND SERVANT.—*Factory Act.—Dangerous Machinery.—Failure to Guard.—Contributory Negligence.*—An experienced machinist who, in adjusting a woodworking machine, chose a bit which when placed to do the desired work was exposed several inches, whereby he was injured, when there were proper bits at his command which would not have exposed him to any danger, is guilty of contributory negligence as a matter of law. pp. 424, 425.

4. TRIAL.—*Instruction.—Master and Servant.—Use of Machine.—Obvious Character of.*—An instruction that the defendant failed to give to the plaintiff proper instructions as to the use of the guide on a machine, was properly refused, where the servant knew as much about the use of such guide as the master. p. 425.

5. MASTER AND SERVANT.—*Guarding Dangerous Machinery.—Question for Jury.—Contributory Negligence.*—Whether a machine can be guarded, and whether a machine was properly guarded, are questions for the jury; but when it is admitted that a machine furnished can be used safely, to the knowledge of the servant, and he voluntarily chooses to use it in an unsafe manner, sustaining injuries thereby, the question of contributory negligence is for the court. p. 425.

From Johnson Circuit Court; *William E. Deupree,* Judge.

Action by George W. Cutsinger against Julius W. Pinnell and another. From a judgment on a verdict for plaintiff for $4,000, defendants appeal. *Reversed.*

*Elmer E. Stevenson* and *E. A. McAlpin,* for appellants.
*R. M. Miller* and *H. C. Barnett,* for appellee.

RABB, J.—This appeal is from a judgment in favor of appellee against appellants, in an action to recover damages for personal injuries sustained by appellee while in appellants' service at their planing-mill, and alleged to have been caused by appellants' negligence in failing to comply with section nine of the factory act (Acts 1899, p. 231, §8029 Burns 1908), requiring dangerous machinery to be guarded.

The questions presented by the record arise upon the action of the court below in overruling appellants' motion for judgment in their favor upon answers to interrogatories returned by the jury with their general verdict, and their motion for a new trial.

The answers to the interrogatories returned by the jury are not harmonious, and, in view of the inferences and presumptions that arise to sustain the general verdict, as against answers to interrogatories, no error intervened in overruling appellants' motion for a judgment in their favor thereon.

1.

Appellants' motion for a new trial calls in question, among other things, the sufficiency of the evidence to sustain the verdict. The substantial facts in the case, as disclosed by the evidence, were not in dispute, and were as follows: For a number of years prior to the happening of the accident in question, appellants were engaged in operating a planing-mill in the town of Greenwood, and for five or six years preceding the accident appellee had been engaged at work in the planing-mill. Among other machines used by appellants in their factory was one known as a "universal wood worker." This machine consisted of a mandril, upon which were fitted sometimes saws and sometimes bits of various sizes, and was so constructed as to be adjustable to the use of either saws or bits, varying in size from one-half inch to eight inches. The machine was operated by steam-power transferred to the mandril by belts and pulleys. Over the mandril, and forming part of the ma-

chine, was an adjustable table about seven feet long, ten or eleven inches wide, with an aperture in the center extending across the table and separating it into sections. Through this aperture the saws or bits extended sufficiently to do the work designed of either sawing or planing. This aperture was adjustable, and could be made wide or narrow as the work to be done required. In using the machine as a planer, the table was so adjusted that it would let the sharp edge of the bit extend just far enough above the surface of the table to cut off of the material to be planed a shaving of any thickness desired by the operator. The power turned on the mandril caused it to revolve rapidly, and the operator pushed, by hand, along the surface of the table and against the revolving bit, the material to be planed. Extending lengthwise of the table and across the aperture was an iron appliance, called a guide, which was five and one-half inches in height above the surface of the table, seven-eighths of an inch thick, and three feet in length, with the center over the aperture. This appliance was attached to the table by hand-screws, and was adjustable, so that it could conveniently be brought within one inch of either edge of the table.

On the occasion of the accident to appellee, this appliance could have been so adjusted by him that only that part of the bit covered by the piece of wood he was engaged in planing would have been exposed. The foreman in the mill directed the appellee to do some work on certain pieces of timber about three feet in length by one and three-fourths inches thick, which required them to be planed on the edge. The appellee adjusted this machine to do the work by taking off a knife-head that was then on the mandril and putting one on that had an eight-inch bit in it, and leaving the guide on the machine so adjusted that in planing the material there was an exposure of several inches of the eight-inch bit. The power was applied to the machine, and, in attempting to push the piece of wood to be planed over the bit, in some

manner appellee's left hand slipped off of the piece down on the bare bit, and his fingers were cut off.

Appellee was an experienced workman, had worked with the machine in question a number of years, and was entirely familiar with it and all of its parts. He was expert in adjusting it to the various kinds of work for which it was used, and the adjustment of the machine was left entirely to the discretion of the appellee. There was also furnished to appellee certain clamps that were sometimes used by appellee in attaching pieces of timber on the machine, which served as guards when using bits that were not covered by the articles to be planed, and at the time of the accident these clamps and a piece of timber that appellee had previously used were, to his knowledge, within appellee's convenient reach.

No specific thing denominated a guard was furnished by appellants for this machine while it was being used as a planer, and no instructions were given to appellee by appellants in reference to the use of a guard of any kind on the machine. From the nature of the machine and its various uses it was impracticable to place a permanent guard upon it. What would be a sufficient guard for a saw could not be used for a bit, and what would be a sufficient guard for one sized bit would not do for another, so that whatever guard was put on the machine, would of necessity have to be placed there each time the machine was readjusted for work, and, from the manner in which it was operated, it was not possible to cover all of the bit used on the planer, and the only guard that could be used was some device that would cover that part of the bit used that was not covered by the material to be planed.

Appellants contend that the iron guide on the machine was a proper guard, within the contemplation of the statute, and that appellee's injury was due to his own fault in using a bit longer than was necessary to do the work, and in failing

properly to adjust the machine so that it would cover all of the bit except that part necessary to plane the material.

Appellee insists that the appliance referred to was not a guard, not provided as a guard, but as a guide, and that it was the statutory duty of the appellants to furnish a guard for the machine, and that no matter if the machine was furnished with an appliance that could be adjusted by the workman, so as to afford the operator full protection, that this did not comply with the statute; that the very thing designated by the statute must be furnished, or the proprietor of the factory would be liable, and our attention is directed to the cases of *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319, and *Blanchard-Hamilton Furniture Co.* v. *Colvin* (1904), 32 Ind. App. 398.

In the case of *Davis Coal Co.* v. *Polland, supra,* the action was to recover damages for injuries arising upon the failure of a mine operator to comply with the provision of the statute on the subject of mines, which requires mine operators to furnish certain specific things and perform certain specific duties for the protection of the miner, and it is not in point, for the reason that the statute under consideration, makes no specific requirements in this regard.

The only question decided in the case of *Blanchard-Hamilton Furniture Co.* v. *Colvin, supra,* is that it is not the duty of the employe to furnish guards for a machine at which he works, nor to ask his employer to furnish such guards. Both of these cases are clearly distinguishable from this case. The statute under which this action is brought, imposing the duty on the owner of factories to guard dangerous machinery, is very general and indefinite in its terms. Its provisions on the subject are as follows: "All vats, pans, saws, planers, gearing, belting, shafting, set-screws and machinery of every description therein, shall be guarded." §8029, *supra.* This statute must receive from the court such construction as will carry out its very evident purpose. It was intended to protect those

who worked around dangerous machinery from injury therefrom, and not to impose unreasonable requirements or onerous and unnecessary burdens upon the owner of the factory. In what particular manner or by what particular means the dangerous machinery is to be guarded is not specifically pointed out, but it is clear that guards to such machinery, within the legislative meaning, are such appliances, whatever they are and by whatever name they may be called, as will accomplish the legislative purpose, i. e., protection to the employe working at the dangerous machine; and appliances furnished and supplied to such machine, that will afford such protection, are guards within the meaning of the law.

In this case an expert and experienced machinist was directed to do a certain piece of work, which was required to be done on a certain machine that had to be adjusted to the work. The manner of doing the work and adjusting the machine, with all of its appliances, including the bits to be used, was left entirely to his own discretion. He was entirely familiar with the machine, and knew how all of its parts could be adjusted. The material to be planed exposed to the planer a surface of about one and three-fourths inches. He voluntarily chose for the purpose of doing the work, a bit eight inches long. He might have selected one of the substantial length of the surface to be planed. The machine was supplied with an appliance which could readily have been adjusted so as to leave none of the eight-inch bit exposed, and would have protected him from injury therefrom, and this fact he knew, and knew also how to adjust the appliance so as to protect himself, but, instead of doing so, he voluntarily adjusted the machine to do the work in such a manner as to leave exposed several inches of the large bit he had so chosen, and for this reason suffered the injury complained of.

It is insisted that no instruction was given to the appellee in reference to using the iron appliance called a guide, or

anything else as a guard for such machine. The only purpose of instruction is to inform the person instructed of some matter he did not know. Instructions to appellee, in this case, would have been superfluous. He knew as much as the appellants about the machine, the dangers to be apprehended therefrom, and the manner by which they could be avoided.

The only reason given by appellee why he did not adjust the iron guide so as to cover all of the bit he was using except that necessary to do the work, was that that portion of the bit he would have been required to use, had the guide been so adjusted, was dull. The evidence shows that an emery-wheel was provided by appellants for the sharpening of bits and other tools, and that appellee knew of the fact, knew how to sharpen the bit, and frequently did so. As before stated, it was left to his discretion what bit he would use, and if he desired to use this particular bit he should either have sharpened it himself or called the attention of his employer to the fact that it was dull, rather than take the risk of exposing himself to injury by its use unguarded.

It is insisted that the question whether a proper guard was furnished for the machine was for the jury, and that its determination on that subject is conclusive, and we are cited to the decision of this court in the case of *Baltimore, etc., R. Co.* v. *Cavanaugh* (1905), 35 Ind. App. 32. In that case, the court held that the instruction tendered by the appellant was properly refused. It was clearly bad, for the reason that it entirely ignored the question of the appellee's knowledge that the guard in question had been provided. The court said, in deciding the question arising on the refusal to give the instruction, that it was the duty of the employer, not the employe, properly to guard the machinery, and whether appellant did so is a question of fact to be determined by the jury. As a general proposition, this statement of the law is correct. Where

there is controversy as to whether a machine in question can be guarded, or whether a certain appliance is a sufficient guard, the question is undoubtedly for the jury; but when the fact that the machine can or cannot be guarded, without interfering with its use, is conceded or admitted, there is nothing for the jury to decide on that subject. So, also, when it is granted that a given appliance with which a machine is furnished, and which it is the duty of the operator to use, and which he knows how to use, will or will not, if used, protect him from injury, then there is nothing for the jury to decide and the master's liability or exemption follows the fact as a legal conclusion.

From the undisputed facts appearing in the evidence, the appellants were not legally liable for the injury complained of. *Cincinnati Seating Co.* v. *Neiry* (1907), 40 Ind. App. 144; 1 Labatt, Master and Servant, §343; *McGinty* v. *Waterman* (1904), 93 Minn. 242, 101 N. W. 300; *Cluny* v. *Cornell Mills* (1893), 160 Mass. 218, 35 N. E. 772.

Judgment of the court below reversed, with instructions to grant a new trial.