## GRACE V. GLOBE STOVE & RANGE COMPANY.

[No. 5,906.    Filed October 8, 1907.]

1. **MASTER AND SERVANT.**—*Factory Act.*—*What Machinery to be Guarded.*—The factory act (§7087i Burns 1901, Acts 1899, p. 231, §9) requires the guarding of only such machinery as a reasonably prudent man would consider to be dangerous and liable to cause injury.  p. 331.

2. **SAME.**—*Methods of Work.*—*Choosing of Dangerous.*—Where a servant voluntarily chooses a dangerous method of doing his work, when a safe way is provided, he cannot recover for injuries received from performing the work in such dangerous way. p. 332.

3. **SAME.**—*Ways, Works and Machinery.*—*Care.*—The master is required to use only ordinary care to furnish safe ways, works and machinery.  He is not an insurer.  p. 332.

4. **SAME.**—*Factory Act.*—*Repairing Belt.*—*Contributory Negligence.*—An experienced servant, knowing and appreciating the dangers, who voluntarily undertook, without orders or direction, to take a belt from a rapidly rotating shaft and place it on a hanger, preparatory to lacing it, when he could have stopped the shaft without inconvenience, is guilty of contributory negligence as a matter of law.  p. 332.

5. **TRIAL.**—*Complaint.*—*Evidence.*—*Variance.*—Where a complaint alleged that plaintiff was injured while mending a belt attached to a rapidly rotating line-shaft, evidence that he was injured in attempting to adjust the belt to the hanger was outside of the issues.  p. 333.

From Howard Circuit Court; *J. F. Elliott,* Judge.

Action by Michael Grace against the Globe Stove & Range Company.  From a judgment for defendant on the answers to interrogatories notwithstanding the general verdict for plaintiff for $3,000, plaintiff appeals.  *Affirmed.*

*John B. Joyce, Milton Bell, William Purdum, J. W. Cooper* and *Thomas S. Gerhart,* for appellant.

*Blacklidge, Shirley & Wolf,* for appellee.

HADLEY, J.—This is an action instituted against appellee for damages for personal injuries sustained by appellant while in the employ of appellee.

The complaint is in one paragraph, and avers that ap-

pellee is an Indiana corporation engaged in manufacturing
stoves and ranges; that appellant was an employe in its fac-
tory at Kokomo; that his duty consisted in managing and
operating a machine called the "buffer," which was used
for the purpose of polishing metal; that said machine was
driven by a belt, connecting it with a counter-shaft directly
over said machine, said counter-shaft being driven by a belt
extending from the same to a line-shaft about twenty feet
away; that said line-shaft was driven at a high rate of speed
by a gas engine; that the belt connecting the line-shaft with
the counter-shaft was old, and it frequently broke; that it
was appellant's duty to mend said belt whenever it broke;
that, in order to make said belt perform said work, appellant
was compelled to and did use a large amount of belt dress-
ing on said belt; that said dressing caused it to stick to said
pulleys and anything else with which it came in contact; that
it was the custom in said factory to throw said belt off the
pulley on said line-shaft every evening when work was
stopped, and also at other times when said engine was
stopped; that when said belt was thrown off of said pulley
it was hung on a hanger by which said line-shaft was sup-
ported and fastened to the floor above it; that said line-shaft
was about eight feet above the floor whereon appellant
worked; that a run-board had been placed about four feet
above the floor under said line-shaft for the workmen to
stand on, so as to reach said shaft for the purpose of adjust-
ing said belts and for any other purpose necessary; that on
May 26, 1903, said belt broke; that appellant got ready to
mend it; that said belt was then hanging loosely on said line-
shaft and counter-shaft; that said line-shaft was in motion;
that to stop it would have stopped much other machinery
besides the machine which appellant was operating, and
would have caused several men to be idle; that appellant had
often mended said belt under like circumstances; that a por-
tion of the belt dressing that had been used on the belt, as
aforesaid, had fallen off and adhered to said line-shaft, caus-

ing its surface to become sticky and adhesive; that the motion of said line-shaft kept said belt constantly moving, so that it was impossible to mend it; that appellant, for the purpose of getting said belt still, attempted to place it on the hanger before mentioned; that, in order to do so, he was compelled to get upon said run-board, and thereby he came in close and dangerous proximity to said line-shaft; that while standing on said run-board and carefully attempting to place said belt on said hanger, and while exercising due care and caution to avoid injury, said belt adhered to said line-shaft and caught appellant's arm, which was thereby twisted and broken, causing injury; that on and prior to said date said line-shaft was dangerous, in that it was wholly unprotected and unguarded in any way, a fact well known to appellee; that, notwithstanding such knowledge, appellee carelessly and negligently permitted said shaft to remain unprotected and unguarded; that, by reason of said negligent failure of appellee, appellant, while in the performance of his duties as an employe of appellee, and by appellee's direction and instruction, received the injury above specified.

To this complaint appellee filed a general demurrer, which demurrer was overruled. There was a general denial, trial by jury, finding for appellant, general verdict, and answers to interrogatories. Upon motion, judgment was rendered in favor of appellee on the answers to interrogatories. This ruling of the court is assigned as error. The answers to the interrogatories propounded show that appellant was twenty-three years old when he was injured; that he had been operating the buffer twenty-three months; that it was his duty to relace or mend said belt, and that he had been in the habit for a year or more of relacing the same; that appellee had provided for the use of appellant and its other employes a high table or platform, by means of which the employes were able to reach said belt in such a manner as to mend the same without coming in contact with either of said shafts or the machinery; that appellant knew prior to

his injury that appellee had provided this table for said purpose; that said table was in appellee's factory at the time appellant was injured; that appellant made inquiry for said table on the date of said injury, for the purpose of enabling him to reach the belt, in order to relace the same; that said table was so constructed as to be readily moved from one place to another when necessary to reach the belt connecting said line-shaft with the counter-shaft operating said buffer; that there was a partition running parallel with and about eighteen inches west of said line-shaft extending from the floor to the height of about four feet, provided with a two by four scantling at the top; that this partition was not designed or intended as a walk or run-board for the use of appellee's employes, but was used for that purpose; that no officer or agent of appellee had ever instructed appellant to use said partition for the purpose of reaching said line-shaft, or the pulley or belt connected therewith; that appellant, at the time he was injured, was attempting to adjust the belt to one of the hangers so as to prevent the same from coming in contact with said line-shaft while he was mending or relacing the same; that said line-shaft was revolving at the rate of 275 revolutions per minute at the time appellant attempted to adjust said belt to said hanger from his position on the top of said partition; that appellant's injury was caused by having his arm caught by said belt and wound around said shaft in attempting to adjust said belt to said hanger, while said shaft was running at the rate of 275 revolutions per minute, and while appellant was standing on said partition; that said line-shaft was provided with a friction clutch, whereby it could be thrown out of gear at any time when necessary to stop the same in order to adjust the belt or make any necessary repairs of the appliances connected with said line-shaft; that it was the duty of the engineer in appellee's factory, whenever it was necessary to adjust the belting to the pulleys connected with said line-shaft, or for appellee's employes to come in contact with said line-shaft or pulley in

making needed repairs or adjustments, to stop said line-shaft, or reduce the speed thereof by means of said friction clutch, so as to avoid injury to said employes so engaged in making said repairs or adjustments; that it was highly dangerous for appellant to attempt to adjust said belt to said hanger while standing on said partition wall, and while said shaft and pulley were revolving at the rate of 275 revolutions per minute; that appellant could have caused said line-shaft and pulley to be stopped by means of said friction clutch, by requesting the engineer to stop the same, in order to enable him to adjust or attach said belt to said hanger immediately before he was injured; that no officer, superintendent, foreman, or agent of appellee had ever instructed or advised appellant to attempt to attach said belt to said hanger while said shaft and pulley were in motion; that, if appellant had caused said shaft to be stopped immediately before attempting to adjust said belt in the manner he was attempting to do when injured, he could have so adjusted the same without risk of having his arm drawn around said shaft; that it would have been much safer for appellant to attempt to adjust said belt as he was attempting to do when injured, if he had caused said line-shaft to stop long enough to enable him to make such adjustment; that appellant could have adjusted said belt to said hanger with reasonable safety, if said shaft had not been in motion at the time; that no officer, superintendent, or foreman of appellee, at or prior to the time appellant was injured, had any knowledge he was about to adjust said belt to said hanger while said shaft was in motion; that it would have been necessary to stop said shaft thirty seconds in order to enable appellant to attach said belt to said hanger while the same was not in motion; that, if said belt had been attached to said hanger while said line-shaft was not in motion, appellant could then have mended said belt, by means of said table, with reasonable safety; that said line-shaft was placed at such an elevation from the floor of appellee's factory as

to avoid the danger of appellant's coming in contact therewith while operating the machine, or to appellee's employes while walking about on the floor of said factory; that, in order to come in contact with said line-shaft, it was necessary for appellant to climb upon some elevation two feet or more above said floor; that at and prior to the time of appellant's injury said line-shaft was maintained in appellee's factory in the usual and generally accepted manner, as such line-shafts are maintained in order best to protect employes in factories from injury by coming in contact therewith; that appellant.had been familiar with the condition of the line-shaft and pulley, at the point where he was injured, for twenty-three months; and that there was no danger about said line-shaft, pulley or belt of which appellant was ignorant prior to his injury.

It is the theory of this action that the negligence of the appellee consisted in failing to perform the statutory duty of properly guarding the line-shaft upon which appellant was injured. It is earnestly insisted by the appellee that this shaft, located as it was, eight feet from the floor, did not require any further protection. The jury found, in answer to interrogatory forty-two, that said line-shaft was maintained in appellee's factory in the usual and generally accepted manner such shafts are maintained, in order best to protect employes from injury by coming in contact therewith. The statute does not require that every piece of machinery in a large building should be guarded. Factories are only required to guard against such dangers as would appear to a reasonably prudent man as liable to exist. *Robertson* v. *Ford* (1905), 164 Ind. 538; *Glens Falls, etc., Cement Co.* v. *Travelers Ins. Co.* (1900), 162 N. Y. 399; *Cobb* v. *Welcher* (1894), 75 Hun 283.

It is also clear from the answers to the interrogatories that the proximate cause of appellant's injury was his own negligence. The jury found that appellee had provided a table or platform to be used when lacing belts; that it had pro-

vided a friction clutch to stop the line-shaft; that it was the duty of the engineer, when requested, to stop said line-shaft; that to stop the line-shaft to enable appellant to place the belt over the hanger would not have taken over thirty seconds; that, if appellant had employed these means thus provided for the work he set about to do, he could have performed it with reasonable safety, and that to undertake it in the manner he did was highly dangerous.

It is true, the jury found that there was no evidence that the line-shaft had ever been stopped for such purpose; but the jury also found that no officer, superintendent, or foreman of appellee had ever instructed appellant to perform this hazardous feat in any other manner than by the safe means provided, as aforesaid. It is also found that appellant knew of the safe means provided for him, and also knew the dangerous character of the manner in which he undertook to perform his task. This brings his act within the rule that where the employer provides a safe way for the employe to perform a given task, and the employe chooses to perform it in another and dangerous way, and is injured thereby, the employer cannot be held liable. *Consolidated Stone Co.* v. *Redmon* (1899), 23 Ind. App. 319; *Chamberlain* v. *Waymire* (1904), 32 Ind. App. 442; *Wabash Paper Co.* v. *Webb* (1896), 146 Ind. 303.

The jury found that this shaft was maintained in the usual and generally accepted manner, as such shafts are maintained in factories, in order best to protect their employes. Extraordinary care cannot be demanded. *Wabash Paper Co.* v. *Webb, supra.* Employers are not insurers of their employes' safety. *Robertson* v. *Ford, supra.*

Appellant had worked in this factory twenty-three months. He was twenty-three years old. All of the perils he encountered when injured were open, obvious, and known to him. His employers had provided him reasonably safe means and appliances for the performance of

his duties, all of which he knew. He chose to perform his task in his own, and a more dangerous, way, all of which facts are in irreconcilable conflict with the finding in the general verdict that he should recover. It is urged as a reconciliation of the answers to interrogatories with the general verdict that there might have been evidence that it was the custom in this factory to adjust the belt on the hanger and lace the belt in the manner in which appellant attempted to do it. But the complaint does not proceed upon such theory. There are no averments in the pleadings to warrant such evidence.

It is averred that appellant had often mended the belt under like circumstances—*i. e.,* while the line-shaft was in motion—but appellant was not injured while mending the belt, but while attempting to place it on the hanger preparatory to relacing it. This averment falls far short of alleging that it was the custom sanctioned by appellee to adjust the belt to the hanger while the shaft was moving at a high rate of speed.

In our view of the case, it is unnecessary to consider other questions presented.

Judgment affirmed.