# WATT, ADMINISTRATRIX, v. MISHAWAKA PAPER AND PULP COMPANY.

[No. 7,732.   Filed November 26, 1912.   Rehearing denied January 30, 1913.   Transfer denied June 24, 1913.]

1. NEGLIGENCE.—*Trial.—Directing Verdict.*—Where the issuable fact is one of negligence, it is the duty of the trial court to direct a verdict for defendant, if the evidence fails to establish one or more of the facts essential to a right of recovery.   p. 684.

2. TRIAL.—*Directing Verdict.—Evidence.*—Where there is no dispute as to the facts involved, nor as to the inferences that may be properly drawn therefrom, the court should direct a verdict; but if any facts are made to appear from the evidence about which reasonable and fair minded men might differ, the case should be submitted to the jury.   p. 684.

3. MASTER AND SERVANT.—*Injuries to Servant.—"Laborer."—Unguarded Machinery.*—Under evidence showing that decedent, although having a certain control over the laborers in defendant's mill, was hired as a millwright and general utility man, that he looked after the machinery and made necessary repairs, subject to the directions of defendant's secretary, treasurer and manager, and that it was his business to make the particular repair he was attempting at the time of his injury and death, decedent was a "laborer" within the meaning and intent of §8029 Burns 1908, Acts 1899 p. 231, §9, relating to the guarding of machinery. p. 687.

4. MASTER AND SERVANT.—*Injuries to Servant.—Unguarded Machinery.—Belts.*—In an action for the death of a servant, evidence showing that he fell upon an unguarded belt and was thereby carried and hurled to the floor and killed, that employes of defendant in performing their work were frequently required to be about the unguarded belts and pulleys, that such belt could have been guarded so as to protect employes required to work

above same, and without affecting its efficiency, that it was customary for decedent and others to work above such belt in oiling machinery, and that such belt was dangerous, should have gone to the jury as tending to show negligence on the part of defendant in failing to properly guard such belt in compliance with §8029 Burns 1908, Acts 1899 p. 231, §9.    p. 688.

5. MASTER AND SERVANT.—*Injuries to Servant.—Proximate Cause. —Question for Jury.—Evidence.*—In an action for the death of a servant in falling from a ladder on which he was working onto an unguarded belt, whereby he was carried and hurled to the floor and killed, where there was evidence tending to show that the belt could have been so guarded as to prevent him from falling thereon, and if such a guard had been present he would not have been hurt by the fall, the question of whether the slipping of the ladder, or the unguarded belt, or both, was the proximate cause of the death, should have been submitted to the jury under proper instructions.    p. 689.

6. MASTER AND SERVANT.—*Injuries to Servant.—Question for Jury. —Contributory Negligence.*—In an action for the death of a servant who fell from a ladder on which he was standing, while attempting to remove a defective shaft, onto an unguarded belt whereby he was carried and hurled to the floor and killed, where there was evidence showing a custom in defendant's factory not to stop machinery to make repairs unless absolutely necessary, and from which it might reasonably be inferred that such custom originated with the manager, and showing that the manager, knowing that decedent was about to attempt the work while the belts and pulleys below were in motion, did not forbid him to do so, and that it was a custom for defendant's servants to perform similar services while such belts and pulleys were in motion, the question of whether decedent was guilty of negligence contributing to his injury was for the jury.    pp. 690, 692.

7. NEGLIGENCE.—*Reasonable Care.—Question for Jury.*—Reasonable care is such care as a reasonably prudent person would use under the circumstances of the particular case, and whether under given circumstances and conditions a person used reasonable care, or was guilty of contributory negligence, is generally for the jury under proper instructions.    p. 691.

From Laporte Circuit Court; *John C. Richter*, Judge.

Action by Mary Watt, administratrix of the estate of Henry Watt, deceased, against the Mishawaka Paper and Pulp Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Hickey & Wolfe* and *Parks & Parks*, for appellant.

*Frank E. Osborn, Wm. A. McVey* and *Lee L. Osborn,* for appellee.

IBACH, C. J.—Appellant as administratrix sued appellee to recover damages on account of the death of her husband, Henry Watt, alleged to have been caused by appellee's failure to properly guard a certain belt situated in its factory. There was a single paragraph of complaint, and after a demurrer thereto had been overruled, the issues were joined by an answer in general denial. There was a trial by jury, and at the close of all the evidence the court upon motion of appellee directed the jury to return a verdict in its favor, and upon such verdict judgment was rendered.

The error assigned for reversal is based on the action of the trial court in overruling appellant's motion for a new trial, and the sole specification discussed and presented for our consideration is that the court erred in sustaining appellee's motion to direct the jury to return a verdict for appellee. It is the duty of a trial court to direct a

1. verdict for the defendant where the issuable fact is one of negligence, and where the evidence fails to

2. establish one or more of the facts essential to a right of recovery. In all cases where there is no dispute as to the facts involved and no dispute as to the inferences which may be properly deduced therefrom, the court should direct a verdict. But whatever may be the nature of the action, the trial court cannot direct a verdict if any facts are made to appear from the evidence about which reasonable and fair minded men might honestly differ. All such cases must be submitted to the jury. 6 Thompson, Negligence §7393; *Binford* v. *Johnston* (1882), 82 Ind. 426, 42 Am. Rep. 508; *Diezi* v. *G. H. Hammond Co.* (1901), 156 Ind. 583, 60 N. E. 353; *Gregory* v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385, 14 N. E. 228. This brings us to a consideration therefore not only of the evidence most favorable to appellant, but also to a consideration of all the reasonable inferences which the jury would be justified in

drawing therefrom. If it can then be said that the cause of action declared on has been fairly made out, the appellant is entitled to a reversal of this cause, otherwise the action of the trial court will be upheld.

The undisputed evidence shows that appellee on August 8, 1905, was operating a paper mill in the city of Mishawaka, Indiana. Its machine room was about one hundred feet in length north and south, and about twenty-eight feet in width east and west. In this room were situated the various kinds of machinery used in the manufacture of paper. Some six or seven feet from the east wall of this room and extending nearly the whole length thereof was a shaft which operated two fans. This shaft was nine or ten feet from the floor, and was supported by hangers bolted to timbers which were fastened to trusses. This shaft was put up in sections sixteen or eighteen feet long, which sections were joined together by sleeve couplings. Some six feet below this shaft were three belts which moved on pulleys located about six inches above the floor. These belts ran north and south, two ten-inch belts running side by side, and the third, a longer one, extending south beyond the other two. These belts while operating the machinery moved at a rapid rate, and above or about them and the pulleys, there was no guard of any kind. They could have been guarded without interfering with their usefulness, by the construction of a frame work about and over them which would protect persons whose duties required them to be about and near to these belts and pulleys. Between the east wall of the room and the east belt there was a space of four feet and six inches, and between the east wall and west belt there was a space of six feet. The space between the wall and the east belt was used by the workmen as a passage way, and for the purpose of oiling and repairing the machinery. The factory was in operation night and day. In the afternoon of each day the paper machine was "washed up," but the machinery was kept in motion while this process was going on. The

machinery, including the shafting operated by the belts above described, was oiled while they were in motion, and was never stopped for repairs except when they could not otherwise be made. On the morning of August 8, 1905, a section of the long shaft situated above the two ten-inch belts above mentioned, and which operated the fans, was broken and had to be removed for repairing. The stopping of the fans made it intensely hot above the machines. To make this repair decedent had with him his assistant, Woollet, and when the making of the repairs was suggested to Woollet by decedent, he called decedent's attention to the danger of removing the broken portion of the shaft while the belts and pulleys below were revolving, and in this connection decedent remarked, "the old man (referring to the manager or superintendent) will raise hell if we shut down, and I guess we can do it by being careful." Witness Woollet testified that it was necessary to oil the machinery and bearings of this shaft over both belts frequently, and in order to oil them he had to use, and it was the custom of both decedent and witness to use, a ladder resting upon the shaft above and the floor below, and the only way repairs could be made on the shaft was to take it down by means of a ladder, which would necessitate the placing of the ladder over these two belts, that workmen had to pass around these belts sometimes as often as once each day, and sometimes every two or three hours to attend to the belts and pulleys, and it was necessary also for witness or decedent to go about them to oil the machinery and make repairs. Witness Delcamp testified that the men worked all over this room. On the morning of August 8, 1905, witness Woollet, at the suggestion of decedent procured a fourteen-foot ladder, carried it to the rear of the paper machine, followed by decedent, and placed it up to and against the shaft, for the purpose of removing the broken section to repair and replace it. Woollet mounted the ladder, threw a rope over the truss, made it fast to the broken part of the shaft so as to hold it when

loosened, and decedent held the rope. In this manner he removed one portion of the broken section. He then removed the ladder and began to remove the other portion of the broken section in a similar manner, but becoming tired, he came down the ladder, whereupon decedent called to him to hold the rope, and he ascended the ladder, which was over the revolving belts and pulleys, and with a wrench unfastened the sleeve coupling which held the part of the broken section of the shaft to the remainder of the shaft, and immediately the ladder slipped and turned at the opening thus made in the shaft, and though the ladder did not fall, one side of it slipped off the shaft and decedent fell astride the west or inside belt and was carried backwards by it and thrown on his head on the cement floor, killing him instantly. The witness Miller, manager for appellee, testified that it was not practicable to stop machinery while manufacturing paper. Referring also to removing the broken portion of the shaft while the belts beneath were in motion, this witness testified that he said to decedent, "You had better shut down or better wash up, and have the shaft taken down, and in case you have to shut down it will be ready to put up." Decedent then said, "I believe I can take the shaft down with the machinery running." Witness said, "Henry, (deceased) it can be done, but you have got to be awful careful about those belts."

Appellant's argument is that this evidence was sufficient to establish her right to recover, and therefore the case should have been submitted to the jury under proper instructions. Appellee contends, first, that decedent was not a laborer within the meaning of the statute, that he was acting as superintendent or foreman of the factory and was not entitled to the protection afforded to laborers. The evidence shows, that although Watt had a certain

3. control over the laborers in the mill, yet he was hired as a millwright and general utility man, ran the engine, looked after the machinery, and made necessary re-

pairs, and the witness Miller, appellee's secretary, treasurer, and manager, testifies that Watt worked under his direction, that it was his business to repair the machinery, and was his business to repair the particular shaft on which he was engaged when he met his death. We are inclined to hold that when all the duties required of decedent are considered in the light of the evidence, that he was a laborer within the meaning and intent of the statute. *Indianapolis, etc., Traction Co.* v. *Brennan* (1910), 174 Ind. 1, 87 N. E. 215, 90 N. E. 65, 90 N. E. 68, 91 N. E. 503, 30 L. R. A. (N. S.) 85.

4. The point is also made by appellee that the belt in question was not such as is specifically designated by the statute to be guarded. In the case of *Laporte Carriage Co.* v. *Sullender* (1905), 165 Ind. 290, 301, 75 N. E. 270, referring to §8029 Burns 1908, the Supreme Court said: "What evidently was intended or contemplated by the legislature was that those parts of the machinery which were dangerous to employes whose duties required them to work in the immediate vicinity of such dangerous machinery should be properly guarded." The question involved in this contention then is, Does the evidence show that this belt was one about which decedent or any of the workmen of the mill were required to go, in the performance of their work? Much evidence on this point has been already set out, including that of the witness Woollet that the employes in performing their work were frequently required to be about the unguarded belts and pulleys, and that the belts and pulleys could have been guarded so as to protect an employe who was required to work above it, and that it was usual and customary for him and decedent to work above it in oiling machinery. There is evidence that the unguarded belt in question was dangerous, that workmen were required to go about it, and that it could have been guarded without affecting its efficiency, and we hold that this evidence tends to show negligence on the part of appellee in failing to properly guard it, and should have gone to the jury.

It is next argued by appellee that even if it was
5. negligent in failing to guard the belt, yet such negli-
     gence was not the proximate cause of Watt's death,
that even if the belts and pulleys had been properly guarded,
(or even if there had been no belts and pulleys beneath the
ladder) "such would not have prevented the deplorable
death of Mr. Watts, precisely in the manner in which it
occurred." Again referring to the witness Delcamp, we
find that in addition to what has been quoted, he says that
the belts and pulleys could have been guarded by construct-
ing a frame work that would go over both belts and pulleys,
with posts on the outside fastened to the floor, the sides
braced and a cover placed on top. It seems to us that from
this evidence together with all the other evidence in the
case, the jury might very properly have concluded that if
the belts and pulleys had been so guarded that his fall upon
the belts would have been prevented, and that he would
not by them have been thrown upon the cement floor and
killed, that if such a guard had been present, he would have
been unharmed by the fall. There is also evidence tending
to show that he was pulled off the ladder when it slipped,
by his feet coming in contact with the belt beneath. Again
if such an accident was likely to happen by reason of the
failure to guard the belt and pulley, appellee was bound to
use every reasonable effort to prevent it. In the case of
*Balzer* v. *Waring* (1911), 176 Ind. 585, 593, 95 N. E. 257,
the Supreme Court said, "Proximate cause is the act that
immediately causes, or fails to prevent, an injury that might
reasonably have been anticipated would result from the
negligent act or omission charged, and without which such
injury would not have occurred. The test is to be found in
the probably injurious consequences that were to be antici-
pated, and not in the number of subsequent events or agen-
cies that might arise to bring about such consequences."
We think that the facts proven at the trial at least tend to

show that the identical accident which did happen was one which appellee might reasonably have anticipated would have occurred. In the case of *Cincinnati, etc., R. Co.* v. *Acrea* (1908), 42 Ind. App. 127, 133, 82 N. E. 1009, this court said: "In determining proximate cause, the inquiry is directed to the responsible cause, without reference to whether it is the first or last in the succession of events that resulted in the plaintiff's injury." So it occurs to us that a jury trying this cause might under all the evidence correctly find that if the belt and pulley had been guarded in the manner described by witness Delcamp, decedent would not have been killed. But whether it was the absence of the guard, or the slipping of the ladder, or both, which constituted the proximate cause of the death, was, under the evidence in this case, a question to be submitted to the jury under proper instruction. *Indiana Union Traction Co.* v. *Keiter* (1911), 175 Ind. 268, 92 N. E. 982.

6. We come now to the consideration of the last argument of appellee to support the action of the trial court, namely, that decedent did not use reasonable care in attempting to remove the defective portion of the shaft. Again we find that the evidence shows that it was the custom of the operators of appellee's factory not to stop the machinery to make repairs unless absolutely necessary, and whether this custom was originated by decedent or by Miller, the manager, was a matter for the determination of the jury. At least there is evidence from which the reasonable inference might be drawn that it originated with Miller, for Miller himself testified that if the machinery was stopped all the men in the factory would be idle, and the machinery was not shut down for repairs if it was possible to avoid it. The evidence at least tends to show that decedent knew of this custom and that such was the desire of the owners of the mill. The evidence further reveals that decedent as well as the manager realized the danger of doing this repair work on the shaft and yet both believed

it could be done by being careful without stopping the machinery, and the manager, although knowing that decedent was about to make the needed repair by climbing above the moving belts did not forbid him to make it while the machinery was running. So far as any inference may be drawn from all the evidence on this branch of the case, it is fair to say that it was the custom for appellee's servants to perform similar services, while the belts and pulleys involved here were in motion.

The case of *Stephens* v. *American Car, etc., Co.* (1906), 38 Ind. App. 414, 418, 78 N. E. 335, is one very similar to the case at bar, and in that case, considering a similar proposition, the court said, "All that was required of appellant was that he should use reasonable care. If he was guilty of contributory negligence it was only because he attempted to make the adjustment when the machine was running. Appellant testified that it was not necessary to stop the machine to change the screw. So far as any inference may be drawn from the evidence, it was the custom to make such adjustment while the machine was running." See, also, *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 78 N. E. 1033; *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 62 N. E. 492, 92 Am. St. 319; *Espenlaub* v. *Ellis* (1904), 34 Ind. App. 163, 72 N. E. 527. In the consideration of similar cases, the courts have uniformly held that in order to determine whether the injured party has been guilty of contributory negligence, it must first be discovered from the evidence whether he exercised reasonable care for his own safety at, and immediately prior to his injury.

7. What is meant by reasonable care is only such care as a reasonably prudent person would use under the circumstances of the particular case, and whether under given circumstances and conditions a person used reasonable care, or was guilty of contributory negligence, is generally left to the jury under proper instruction.

Appellee contends that the evidence shows that

there was a safe way to do the work required, that
6. decedent chose an unsafe way, and that he was guilty
of contributory negligence in choosing the dangerous
way when a safer way was open to him.    In the case of *Jenney
Electric Mfg. Co.* v. *Flannery* (1913), *ante* 397, 98 N. E.
429, this court said, "the fact that the servant chose a dan-
gerous way provided by the master, instead of a safe .way
or a safer way also provided, is not conclusive upon the
question of contributory negligence.  *  *  *  This fact
should be considered by the jury as bearing upon that ques-
tion in connection with all the other facts and circumstances
tending to prove or disprove due care." Under the evidence
before us men of reasonable minds might honestly differ as
to whether Watt was guilty of contributory negligence in
going upon the ladder and attempting to take down the
broken section of the shaft, or whether he used due care in
so doing, therefore the question of decedent's negligence
was one for the jury.   This is especially true since all the
evidence in the case is oral, and the burden of this issue is
upon the defendant.   Furthermore, this question is to be
determined from all the evidence in the case, not from mere
fragments, and from that evidence it is made to appear
without contradiction that the machinery in the mill was
run day and night, that oiling was done when the machines
and shafting were in motion, that, appellee having so
directed, repairs were always made without closing down
the machinery if possible, because, as one witness stated, "it
is not practicable to stop machinery which manufactures
paper," and the manner used in taking down the shaft was
in no essential different from the manner used every day
in oiling it.

The court erred in directing the jury to return a verdict
for defendant, and for this error the cause must be reversed,
and remanded for new trial.

Judgment reversed.

Note.—Reported in 99 N. E. 1029. See, also, under (1) 29 Cyc. 627; (2) 38 Cyc. 1565; (3) 26 Cyc. 1134; (4) 26 Cyc. 1463; (5) 26 Cyc. 1460; (6) 26 Cyc. 1482; (7) 29 Cyc. 640. As to instructions by court on matters of fact, see 14 Am. St. 36. As to master's duty to guard or enclose dangerous machinery, see note to *Brazil Block Coal Co.* v. *Gibson* (Ind.), 98 Am. St. 299. As to the question of contributory negligence being one for the jury, see 8 Am. St. 849. As to what is comprehended in expression "machinery of every description" in statutes imposing duty on master as to placing guards, see 30 L. R. A. (N. S.) 36. For common practice as the measure of master's duty to guard machinery, see 16 L. R. A. (N. S.) 140.