INDIANA MANUFACTURING COMPANY *v.* COUGHLIN, ADMINISTRATOR.

[No. 9,148. Filed February 14, 1917. Rehearing denied June 1, 1917. Transfer denied June 29, 1917.]

1. APPEAL.—*Review.*—*Reversible Error.*—*Overruling Motion to Make More Specific.* — Section 343a Burns 1914, Acts 1913 p. 850, providing that any conclusion stated in any pleading must be considered and held to be equivalent to an allegation of all the facts required to sustain such conclusion when the same is. necessary to the sufficiency of the pleading, subject to the right of the party affected thereby to move that the facts be stated, and, if the facts upon which material conclusions are based do not sufficiently appear from the pleading when read in its entirety, the overruling of a motion to make the pleading state them will constitute prejudicial and reversible error. p. 276.

2. PLEADING.—*Complaint.*—*Pleading Conclusions.* — In an action for the death of a servant caused by a defective coupling on a line shaft in defendant's factory, a conclusion in the complaint "that in the course of said employment and in compli-

ance with instructions given by said defendant corporation to said decedent, said decedent was, on said day, engaged in putting up a system of telephone wire in defendant's said factory" was sufficiently supported by averments of fact that defendant directed that the wire be placed on the joists and ceiling of the factory room through a course along the line shaft within a space of approximately two feet over the shaft coupling, and that the employment, so directed, brought decedent alongside of and over the alleged defective coupling. p. 276.

3. PLEADING.—*Complaint.*—*Pleading Conclusions.*—In an action for the death of a servant caused by a defective coupling on a line shaft in defendant's factory, conclusions in the complaint "that to comply with the orders and directions of said defendant then and there given to decedent it was necessary for said decedent to and he did go close alongside of and over said shaft coupling," and "that said unguarded shaft coupling was at a place where workmen of said defendant, including decedent, were, at the time of the placing of said telephone wires, required to go," were, in so far as they were material, sufficiently supported by averments of fact that defendant directed that the wire be placed on the joists and ceiling of the factory room along the line shaft approximately two feet over a rapidly revolving shaft coupling which defendant had negligently failed to guard, and that the employment, as directed by defendant, brought the decedent alongside and over the coupling. p. 276.

4. PLEADING.—*Complaint.*—*Pleading Conclusions.*—In an action for the death of a factory employe caught by a defective coupling on a line shaft while engaged in the installation of a telephone system, a complaint based on the Employers' Liability Act (§§8020a-8020k Burns 1914, Acts 1911 p. 145), meets the requirements of the act by alleging facts showing that decedent was ordered by his employer to work at a place made dangerous by its negligence, and while performing such work as ordered and by reason of conformance to the order, decedent received the injury causing his death, and any averment, by way of conclusion, with reference to other employes' being required to work at such place was not essential to the sufficiency of the pleading, and conclusions in the complaint that a coupling on a line shaft "was unguarded so as to protect from injury the employes of defendant corporation who worked about the same" and "that in the course of said employment and in pursuance to the instructions of said defendant, decedent was on said day engaged in putting up a system of telephone wires in defendant's said factory in the vicinity of said shaft coupling," were sufficiently supported by averments of fact showing the character of the work which defendant required

of decedent, the nature of the order and directions given to decedent by defendant, that in conforming to such order and directions decedent was required to be and was, in fact, brought in close proximity to the coupling, and that the coupling was unguarded and was in motion when decedent was directed to do the work which brought him in contact with it. p. 277.

5. PLEADING.—*Complaint.*—*Pleading Conclusions.*—In an action for the death of a factory employe based on the Employer's Liability Act (§§8020a-8020k Burns 1914, Acts 1911 p. 145), a conclusion in the complaint "that said injury to said decedent was caused directly by the obedience of said decedent to the order of" a foreman, was sufficiently supported by averments of fact that defendant's foreman had charge of the work and that he ordered decedent to place a line of telephone wire on the joists and ceiling of a factory room across a line shaft and over an unguarded shaft coupling, which was revolving at a high rate of speed, and that in conforming to such order decedent was caught by the coupling and received the injury resulting in death. p. 278.

6. PLEADING.—*Theory.*—*Sufficiency.*—Where a theory of a pleading has been adopted by the parties, its sufficiency must be determined on appeal upon that theory. p. 278.

7. MASTER AND SERVANT.—*Injuries to Servant.*—*Factory Act.*— *Construction.* — *Dangerous Machinery.* — *Guards.* — The provisions of §9 of the Factory Act, §8029 Burns 1914, Acts 1899 p. 231, 234, requiring dangerous machinery to be guarded, should receive from the courts an interpretation and construction which will carry out the statute's evident purpose to protect those who work around dangerous machinery from injury therefrom, and not to impose unreasonable requirements or onerous and· unnecessary burdens on the factory owner. p. 279.

8. MASTER AND SERVANT.—*Injuries to Servant.*—*Factory Act.*— *Scope.*—*Dangerous Machinery.*—*Guards.*—Section 9 of the Factory Act, §8029 Burns 1914, Acts 1899 p. 231, 233, requiring that dangerous machinery be guarded, while not intended to impose upon the factory owner unreasonable burdens, so as to require him to guard his laborers against every possible danger, extends protection to all laborers in factories using dangerous machinery, regardless of the number exposed, or the character of the work which exposes them to the·danger, and where a factory employe was injured by an unguarded coupling while installing a system of telephone wires over a line shaft under the orders and direction of the master, it was the employer's duty under the statute to guard such coupling, and the failure to do so was negligence, although it was the first occasion upon

which any employe had been brought in dangerous proximity to the coupling. p. 279.

9. MASTER AND SERVANT.—*Injury to Servant.—Action.—Factory Act.—Guarding Dangerous Machinery.—Complaint.*—In an action for the death of a factory employe predicated on §9 of the Factory Act, §8029 Burns 1914, Acts 1899 p. 231, 233, requiring dangerous machinery to be guarded, the duty to guard machinery must be determined in relation to, and in the light of, all the averments in the complaint showing the employment and duties of the particular person invoking the protection of the statute at the time he received his injury. p. 281.

10. MASTER AND SERVANT.—*Injuries to Servant.—Action.—Complaint.—Sufficiency.*—In an action for the death of a factory employe caused by an unguarded shaft coupling, allegations in the complaint that during the time decedent was employed by defendant and subject to the orders and direction of his foreman, and at a time when the unguarded shaft coupling was open and exposed and was being revolved by defendant with force and speed, the foreman carelessly and negligently ordered decedent to place a telephone wire on the joists and ceiling of the factory room across the line shaft and over the coupling, sufficiently show, when aided by permissible inferences, that decedent was directed to place the wire over the shaft coupling while it was in motion. p. 282.

11. APPEAL.—*Briefs.—Sufficiency.*—Where appellant's brief, in its points and authorities, states several general propositions of law without indicating to what particular ground of the motion for new trial it desires to apply them, as required by Rule 22 of the Appellate Court, only such of these propositions as by their wording indicate to what particular ground of the motion they were intended to apply will be considered. p. 283.

12. APPEAL. — *Review. — Harmless Error. — Admission of Evidence.*—In an action for the death of a factory employe caused by an unguarded shaft coupling, error, if any, in the admission of evidence that after decedent's injury the shaft coupling and shaft were boxed and that such protection did not interfere with the running of the line shaft machinery, was rendered harmless by an instruction that such testimony was "no evidence or admission of any negligence on the part of defendant." p. 284.

13. DEATH.—*Negligent Death.—Measure of Damages.—Instructions.*—In an action for wrongful death, an instruction that the jury might consider, in determining the amount of damages, whether decedent's parents would probably have received from him such personal attention and services as are usually rendered by a son living with his parents, taking into considera-

Indiana Mfg. Co. *v.* Coughlin, Admr.—65 Ind. App. 268.

tion all the evidence bearing on decedent's character, habits, disposition, conduct, love for his parents and all other facts and circumstances in evidence enabling the jury to decide the pecuniary loss suffered by the father and mother, and that the verdict should compensate them for their pecuniary loss, is not erroneous as permitting the jury to go outside the evidence or as allowing them to consider improper elements of damage. p. 285.

14. APPEAL.—*Briefs.—Sufficiency.—Waiver of Error.*—Error in the giving or refusal of instructions is waived where not presented under the points and authorities in appellant's brief. p. 286.

From Miami Circuit Court; *Joseph N. Tillett,* Judge.

Action by William H. Coughlin, administrator of the estate of Leo Coughlin, deceased, against the Indiana Manufacturing Company, Elbert W. Shirk, receiver. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Albert H. Cole* and *Charles A. Cole,* for appellant.
*Jabez T. Cox* and *Claude Y. Andrews,* for appellee.

HOTTEL, J.—This is an appeal from a judgment of the Miami Circuit Court in appellee's favor for $2,500, in an action brought against appellant to recover damages for the death of Leo Coughlin. On and prior to November 8, 1912, the time of the occurrence complained of, the Indiana Manufacturing Company was a corporation which employed more than five men, among whom was appellee's decedent, Leo Coughlin, and, on said day, he and others were engaged in installing a telephone system in appellant's factory. While engaged in such work, attempting to pass one of the wires of said system over a pipe some ten or twelve feet above the floor of said factory, decedent came in contact with a coupling of appellant's metal line shaft that was being rapidly revolved, and he thereby received injuries which resulted in his death.

The complaint is in two paragraphs, to each of which

appellant filed a separate motion to require appellee to state the facts necessary to sustain certain conclusions stated therein and indicated in such motion. These motions were overruled. A demurrer addressed to each paragraph of the complaint and a motion for new trial, filed by appellant, were likewise overruled. These several rulings are respectively challenged by appellant's assignments of error, and are relied on for reversal.

The averments common to each of the paragraphs, and necessary to an understanding and disposition of the questions presented by the rulings, *supra,* are in substance as follows: Appellant, for the purpose of transmitting power to its machinery, maintained in its factory a metal line shaft about forty feet long and three inches in diameter. Said shaft was in sections, which were joined together by a certain coupling consisting of two metal discs eight inches in diameter, held together by four bolts extending through the faces of said discs and within one inch from the periphery thereof. Said sections of shaft when thus coupled together formed a continuous shaft. The nuts, and the thread ends of said bolts extending beyond said nuts, projected from the faces of said coupling about two inches. At said times said shafting and coupling could have been guarded so as to protect from injury the employes of defendant who worked about the same, without interfering with the efficient use for which they were designed and used by defendant.

The first paragraph then proceeds in substance as follows: Decedent, on said day, and for some weeks prior thereto, "had been employed by and was working for defendant at said factory; *that, in the course of said employment and in compliance with instructions given by said defendant corporation to * * * said decedent, said decedent was, on said day, engaged in putting up*

*a system of telephone wire in defendant's said factory;* that said defendant directed that said wire be placed on the joists and ceiling of said factory room through a course along said line shaft within a space of approximately two feet over said shaft coupling; that said employment, so directed brought * * * decedent alongside of and over said coupling; *that to comply with the orders and directions of said defendant then and there given to * * * decedent it was necessary for said decedent to and he did go close alongside of and over said shaft coupling;"* that, while decedent was so employed, and in close proximity with said shaft, defendant caused said shaft and coupling to revolve with great force and speed, viz., 100 horse power, at 200 revolutions per minute; that while decedent was so employed, there was a defect in said machinery and in said coupling, which was known to defendant, to wit, the absence of a guard over said coupling; that defendant had neglected and failed to place and maintain any guard thereover; that said shaft and coupling were at the time in question unguarded; *"that said unguarded shaft coupling was at a place where workmen of said defendant, including * * * decedent, were, at the time of the placing of said telephone wires, required to go;"* that in consequence of said defect and of the negligence of defendant in failing to guard said coupling, decedent, on said day and while in the employ of defendant, was injured by coming in contact in the manner aforesaid with said shafting and coupling, etc., from which injuries he died.

The second paragraph, in addition to the averments common to each paragraph, indicated *supra*, avers that said coupling *"was unguarded so as to protect from injury the employes of defendant corporation who worked about the same;"* that decedent was on November 8, 1912, and for some months prior thereto had been, in

the employ of defendant corporation at said factory; *"that in the course of said employment and in pursuance to the instructions of said defendant, * * * decedent was on said day engaged in putting up a system of telephone wires in defendant's said factory in the vicinity of said shaft coupling;"* that in said work defendant corporation employed one Benedict, who had charge of the construction of said telephone system with authority from said defendant to give orders and directions as to the placing of the wire; that decedent, while engaged as aforesaid, was subject to the order and direction of said Benedict in the construction of said telephone system at the time of the injury; that, when said coupling was being revolved by defendant with great force and speed, in the exposed and unguarded condition aforesaid, "said Benedict carelessly and negligently ordered and directed * * * decedent and others with whom he was working to place a line of telephone wire on the joists and ceiling of said factory room from the westward to the eastward side of said room and thence southward across said line shaft and over said shaft coupling; that decedent complied with said order and proceeded with the execution of said work as ordered and in so doing his body was brought close alongside of and over said exposed shaft coupling when the same was in motion and speed" and injured, etc.; *"that said injury to said decedent was caused directly by the obedience of said decedent to the order of said Benedict."*    (Our italics.)

The portions of each paragraph of the complaint which we have italicized, *supra,* are attacked by appellant's said motions as being conclusions, which should have been supplemented by an averment of the facts necessary to their support. It is insisted in effect that inasmuch as the courts have always jealously guarded the right of a defendant to be apprised of the

facts relied on as establishing liability against him, and inasmuch as the legislature, by the act of March 15, 1913, (§343a Burns 1914, Acts 1913 p. 850) makes any conclusions found in a pleading the equivalent of a statement of the facts upon which it is based, subject only to the right of the party affected thereby, by written motion to have such facts stated, that the overruling of such a motion is necessarily a harmful and prejudicial error.

Generally speaking, appellant's contention is correct. However, in this connection, it should be remembered that it is only those conclusions which are "necessary to the sufficiency of the pleading" that are affected by said act. As to such conclusions, if the facts upon which they are based do not sufficiently appear from the pleading when read in its entirety, the overruling of a motion to make the pleading state them will constitute prejudicial and reversible error. *Premier Motor Mfg. Co.* v. *Tilford* (1915), 61 Ind. App. 164, 111 N. E. 645, 647; *S. W. Little Coal Co.* v. *O'Brien* (1916), 63 Ind. App. 504, 113 N. E. 465.

In its said motion, appellant states as grounds therefor that to support the conclusions involved in the first italicized averment of the first paragraph, *supra,* the facts showing the nature of the employment and the instructions therein referred to should have been stated. Granting this to be true, *such facts* appear in the averment which immediately follows (quoted *supra*). So with the second and third italicized portions of the first paragraph, *supra,* if regarded as conclusions, they, in so far as they are essential to the sufficiency of such paragraph, are justified by the other *facts averred* in such pleading.

It is charged in said motion against the language of the second paragraph first italicized, *supra,* that to sustain such conclusions it was necessary to allege facts

showing that employes of appellant worked about
4.   the shaft coupling referred to, the class of em-
ployes who did such work, and the nature of the
work they were performing when about such shaft
coupling.

The requirements of the statute upon which this
paragraph is based (§§8020a-8020k Burns 1914, Acts
1911 p. 145) were met by alleging facts showing that
decedent was ordered by appellant to work at a place
made dangerous by its negligence, and that while per-
forming such work in obedience to such order and by
reason of such conformance thereto, decedent re-
ceived the injury that resulted in his death, and any
averment, by way of conclusion or otherwise, with ref-
erence to other employes being required to work at such
place was not essential to the sufficiency of the pleading.

It will be observed that said paragraph alleges *the
facts* showing the character of the work which *appel-
lant required of decedent, the nature of the order and
directions given to decedent by appellant,* and that con-
forming to such order and directions *decedent was re-
quired to be, and was in fact, brought in close proxim-
ity to said coupling of said line shaft;* that such coup-
ling was unguarded and *was in motion when decedent
was directed to do the work which brought him in con-
tact with it;* that while obeying such orders and direc-
tions and because thereof decedent was caught by said
coupling, etc.   Said paragraph therefore contains *aver-
ments of all the facts* indicated as necessary by appel-
lant's said motion to support said conclusions, except
those showing the necessity for other employes of ap-
pellant to work near said coupling and the character of
the work required of such employes, and, as before
indicated, such conclusion, in so far as it involves such
facts, is not essential to the sufficiency of said pleading.

As grounds for said motion, in so far as it affects the

conclusion involved in the last italicized portion of said paragraph, quoted *supra,* appellant states that

5. such conclusion should be supported by facts showing the nature of the order and directions given by Benedict, what decedent did in obedience thereto, etc. These facts sufficiently appear from the averments which precede said conclusion. The grounds of said motion affecting the other italicized portions of this paragraph are not substantially different from those discussed in the first paragraph, and hence need not be repeated. No error resulted from the ruling of the trial court on said motions.

We next address ourselves to the third error assigned. It is contended by appellant and conceded by appellee that the first paragraph of complaint proceeds

6. on the theory that the appellant was negligent in violating a duty to guard the coupling in controversy, imposed upon it by the provisions of the Factory Act, §8029 Burns 1914, Acts 1899 p. 231, 234. Upon this theory, therefore, the sufficiency of said paragraph must be determined. *Euler* v. *Euler* (1913), 55 Ind. App. 547, 553, 102 N. E. 856, and cases there cited.

Appellant also concedes that the sole question presented by such assignment of error is whether *"under the provisions of the factory act appellant owed to appellee's decedent a duty to guard the coupling in question."* It is insisted by appellant, in effect, that such act does not require an employer to guard every piece of machinery, even of the kind particularly described therein, but that the terms of the act are complied with when such employer guards the machinery designated therein when its location is such that the employes of such factory, in the usual discharge of their labors and duties, may be brought in close proximity to such machinery when in motion; that the facts averred in said

paragraph show that the coupling in question was eight feet above the floor, completely out of reach of the employes working in and around said factory and the machinery therein, that the *"only employment that ever brought any employe into dangerous proximity to the coupling was on the occasion when plaintiff's decedent was installing telephone wires on the ceiling."*

The italicized words just quoted from appellant's brief state the facts more favorable to its contention than the averments of said paragraph of complaint warrant. However, assuming that such is the effect of the averments of said paragraph, we believe it sufficient when considered in its entirety. It is true, as appellant contends, that the statute in question should receive from the courts an interpretation and construction which will carry out its evident purpose, and that such statute "was intended to protect those who worked around dangerous machinery from injury therefrom, and not to impose unreasonable requirements or onerous and unnecessary burdens upon the owner of the factory." *Pinnell* v. *Cutsinger* (1909), 44 Ind. App. 419, 423, 424, 89 N. E. 493, 495.

However, the protection of said act is extended to all *laborers* in factories using such machinery, regardless of the number exposed, or the character of the work which exposes them to such danger. Upon this question, this court, in the case of *F. Bimel Co.* v. *Harter* (1912), 51 Ind. App. 267, at page 276, 98 N. E. 360, 363, said: "The evident intention of the legislature in passing the factory act was *to protect,* so far as it may reasonably be done, *all laborers* in factories using dangerous machinery about which laborers are required to go in doing the work required of them. * * * By reason of that act *the only necessary requisite* for guarding it (a set screw) *was that some*

*laborer was required to go about it in doing his work."* (Our italics.) See, also, *Watt* v. *Mishawaka Paper, etc., Co.* (1913), 53 Ind. App. 682, 99 N. E. 1029.

It is true, as appellant contends, that it was not intended by the statute in question to impose upon the factory owner unreasonable burdens, or to require that he guard his laborers against every possible danger *(Robertson* v. *Ford* [1904], 164 Ind. 538, 74 N. E. 1; *Glens Falls, etc., Cement Co.* v. *Travelers' Ins. Co.* [1900], 162 N. Y. 399, 56 N. E. 897; *Cobb* v. *Welcher* (1894), 75 Hun 283, 26 N. Y. Supp. 1068) ; but this principle and line of cases have no application where, as in the instant case, it appears that the machinery in question is of the kind required by the statute to be guarded, that there was a total failure to guard it, and that the master, knowing its unguarded condition, required its employe to work at a place where he would be exposed to the danger of such unguarded machinery while it was being operated. In such a case, the statute makes imperative the duty to guard, and a failure to do so is negligence. *Robbins* v. *Ft. Wayne Iron, etc., Co.* (1907), 41 Ind. App. 557, 563, 84 N. E. 514; *F. Bimel Co.* v. *Harter, supra; United States Cement Co.* v. *Cooper* (1909), 172 Ind. 599, 612, 88 N. E. 69; *Cincinnati, etc., R. Co.* v. *Armuth* (1913), 180 Ind. 673, 677, 679, 103 N. E. 738.

We are aware that there are cases in other jurisdictions which lend support to appellant's contention, notably *Glens Falls, etc., Cement Co.* v. *Travelers' Ins. Co., supra; Cobb* v. *Welcher, supra; Dillon* v. *National Coal Tar Co.* (1905), 181 N. Y. 215, 73 N. E. 978; *Shaw* v. *Union Bag, etc., Co.* (1902), 76 App. Div. 296, 79 N. Y. Supp. 276, 277, 278; *Glassheim* v. *New York, etc., Printing Co.* (1895), 13 Misc. Rep. 174, 34 N. Y. Supp. 69, 72. Other New York cases, however, indicate a more liberal construction of such statute.

*Hartman* v. *Berlin, etc., Co.* (1911), 71 Misc. Rep. 30, 127 N. Y. Supp. 187; *Walker* v. *Newton Falls Paper Co.* (1904), 99 App. Div. 47, 90 N. Y. Supp. 530. It seems from some of the New York cases that the court justified its limitation of the protection of the act involved in the particular case to "employes required to work about machinery in motion" on the ground that the title of the act being construed indicated an intention on the part of the legislature to so restrict its application. This is true with reference to the act of 1897, New York Laws 1897, chapter 415, §81. *Shaw* v. *Union Bag, etc., Co., supra.* This reason could not operate in construing the Indiana statute, because the title of the Indiana act, instead of indicating any intention to restrict the protection of the act to any particular class of employes, shows an intention to extend its protection to all laborers exposed to the dangers of such machinery. Acts 1899, ch. 142, p. 231, *supra,* entitled "An Act concerning labor, and providing means for protecting the liberty, safety and health of laborers, etc." However, whatever may have been the reasons for the restricted interpretation, indicated by the New York cases cited *supra,* such interpretation has not received the approval of the courts of appeal of this state, and the great weight of authority in other jurisdictions favors the liberal construction adopted by our courts. 5 Labatt, Master and Servant (2d ed.) 5672, 5673, §1856, and cases there cited.

If this were an action by an employe of appellant whose employment required him to be on the floor of appellant's factory, the duty to guard in favor of 9. such employe would not be shown by the averments in question, but the duty to guard under the statute must be determined in relation to and in the light of all the averments of the pleading showing the employment and duties of the particular per-

son invoking the protection of the statute at the time he received his injury. As was said by this court in the case of *H. A. McCowen & Co.* v. *Gorman* (1912), 51 Ind. App. 523, 100 N. E. 31: "If, as contended by appellant, the shaft was eight feet above the floor, *and decedent was not required to be nearer it than the floor, in the performance of his work*, then the cases of *Robertson* v. *Ford, supra,* and *Grace* v. *Globe Stove, etc., Co.* (1907), 40 Ind. App. 326, 82 N. E. 99, would be in point," (our italics) but the averments of the complaint in question show that at the time appellee's *decedent* was injured he *was required by appellant to perform work which took him in close proximity to said coupling,* and hence he was entitled to the protection of said statute.

In addition to the objection urged against the first paragraph above discussed and determined, appellant insists, in support of his fourth assigned error, 10. *supra,* that the alleged negligent order relied on in the second paragraph of complaint did not direct decedent to place the telephone wire over the shaft coupling while it was in motion.

Assuming, without deciding, that the averments of said paragraph may be open to the interpretation insisted on by appellant, yet their fair and reasonable interpretation at least permits the inference that Benedict ordered said decedent to place said wire over said shaft *while it was in motion.* This interpretation is, we think, justified by the following averments, which follow those showing decedent's duty to obey the orders of Benedict, viz.: "Plaintiff avers that *during the time* his *decedent was.* employed by defendant corporation and *subject to the orders and directions of said Benedict* as aforesaid, and *at a time when said shaft coupling, in the condition aforesaid, was open and exposed and was being revolved* by defendant with force and

speed as aforesaid, *said Benedict carelessly and negligently ordered and directed plaintiff's decedent,* and others with whom he was working, *to place the telephone wire on the joists* and ceiling of said factory room from the westward to the eastward side of said room and thence southward across said line shaft and *over said* shaft coupling." Under the more recent decisions of the Supreme Court and this court inferences which may be reasonably and fairly drawn from the facts well pleaded may be indulged in favor of a pleading. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99. For the reasons indicated, we are of the opinion that no error resulted from the rulings on said demurrers.

In its brief under its points and authorities, and under the heading "Fifth Assignment of Error," appellant states several general propositions of law 11. without indicating to what particular ground of the motion for new trial it desires to apply them. This is not a compliance with Rule 22 of this court, and only such of these propositions as by their wording indicate to what particular ground of the motion they were intended to apply will be considered by the court. In so far as such propositions may apply to that ground of the motion which challenges the sufficiency of the evidence, they present substantially the same questions that we have considered and determined in our discussion of the sufficiency of the complaint, and hence need not be further discussed.

By its twenty-sixth proposition, appellant says that "it is error to admit evidence that after an accident defendant had placed guards on the machinery"; that such evidence is incompetent either for the purpose of showing negligence, or for the purpose of showing that such machinery could be guarded without impairing its usefulness. This proposition is evidently intended to

apply to that ground of appellant's motion for new trial which challenged the action of the trial court in admitting the following evidence, viz.: L. D. Zook, a witness for appellee, was asked whether he saw "this same coupling and the line shafting in operation while it was boxed after the injury of Leo Coughlin" to which the witness responded, "Yes sir, I did." This was followed by another question which elicited the answer that "it did not interfere with the running of the line shaft machinery at all."

It is contended by appellee that this ruling of the trial court is not properly saved and presented for our consideration, but assuming without deciding 12. that it is, we are of the opinion that any error involved in the admission of such evidence which might have been prejudicial to appellant was rendered harmless by an instruction given by the court, in which the jury was told that such evidence was "no evidence or admission of any negligence on the part of defendant."

The only other possible effect the evidence could have had, was its effect on the question whether such machinery could be guarded without interfering with the use of the machine, and this was not a controverted question in the case. There was no evidence and no claim that it could not be so guarded. The Supreme Court in the case of *Cincinnati, etc., R. Co.* v. *Armuth,* *supra,* had before it the same question, and while it held that the evidence was not admissible for either of the purposes indicated, it also held that any prejudicial error in that case was cured by an instruction similar to that given in this case. On the authority of that case, we hold that any error resulting from the admission of said evidence was rendered harmless by the instruction indicated.

While the grounds of the motion for new trial chal-

lenge the action of the trial court in giving and refusing to give the several instructions given and refused, the only reference to instructions found in appellant's points and authorities is contained in proposition 27, which is as follows: "An instruction that the jury, in determining the amount of damages, might consider whether decedent's parents would probably have received from him such personal attention as is usually rendered by a son living with his parents, and that they might consider his love for his parents in arriving at such damages is erroneous because it permits them to go outside the evidence, and because it allows them to consider improper elements of damage."

We assume that this proposition is intended to apply to that part of instruction No. 18, given by the court at appellee's request, which reads as follows, viz.: "If the said decedent and his father and mother lived together as members of a family you may also consider whether said father and mother may have reasonably expected and would have probably received from their said son, Leo Coughlin, such personal attention and services as are usually rendered by a son so living with his father and mother under such circumstances as said decedent lived if you find he did so live as a member of his family considering all the evidence bearing on his character, habits, disposition, conduct, love for his parents and all other facts and circumstances *in evidence which will enable you intelligently to decide the pecuniary loss* suffered by said father and mother, and return a verdict if you find for the plaintiff in such sum as will fully compensate said father and mother for the *pecuniary loss* they have sustained by said decedent's death, not to exceed, however, ten thousand dollars." (Our italics.) We do not think the language quoted is open to the objection indicated.

Error, if any, in giving or refusing to give any other instruction is waived because not presented under appellant's points and authorities. *Nashville, etc., R. Co.* v. *Johnson* (1915), 60 Ind. App. 416, 431, 106 N. E. 1087, 109 N. E. 912, 917.

Finding no reversible error in the record, the judgment below is affirmed.

NOTE.—Reported in 115 N. E. 260. Master and Servant: master's duty to guard dangerous machinery, 98 Am. St. 290, 18 Ann. Cas. 652, Ann. Cas. 1914A 658; right of action for violation of factory act relative to the guarding of dangerous machinery, L. R. A. 1915E 541, 26 Cyc 1133.